## In re WILLIS H. CLARK, Ex Parte.

In Banc, December 24, 1907.

1. **HABEAS CORPUS: Commissioner to Take Evidence: Waiver.** Where petitioner for *habeas corpus*, after writ issued out of the Supreme Court, filed brief, and appeared on the day set for the hearing and made oral argument, and submitted the cause on the theory that the facts essential to determine the issues are disclosed by the judgment and commitment, and does not press his application, previously filed, for the appointment of a commissioner to take testimony on the controverted questions of fact, the case will be treated as if the application had been abandoned or waived.

2. ————: ————: ————: **Recital of Facts: As to Jurisdiction.** Whether or not the jurisdiction of the court committing an attorney for contempt, cannot be sustained by false recitals of the existence of facts upon which its jurisdiction depends, is a question not in the case, if the petitioner waived the appointment of a commissioner to take testimony on controverted facts, for then the case takes the form of a case submitted on facts not controverted.

In re Clark.

3. ———: Jurisdiction: **Facts Dehors.** Where the petitioner in *habeas corpus* waives the appointment of a commissioner to take testimony on controverted facts, there are no facts *dehors* the record bearing on the question of whether the court which committed petitioner for contempt was or was not a court of general jurisdiction, etc.

4. ———: ———: **Circuit Court Sitting in Criminal Case.** A division of the circuit court of St. Louis is a court of general jurisdiction, proceeding according to the course of the common law, notwithstanding much or all of its time is taken up with the trial of criminal cases, for that fact does not make it any the less a circuit court.

5. ———: **Denial by Court of Appeals: Estoppel by Record.** A refusal by a court of appeals to discharge a petitioner on *habeas corpus* is no ground for a like denial by the Supreme Court, and no reason for refusing to consider the cause of his imprisonment to its utmost verge. It is only when a court of superior jurisdiction has denied relief, that a plea of estoppel by record is good.

6. ———: **Things Taken as True.** When a *habeas corpus* case has been submitted in the Supreme Court without the appointment of a commissioner to take testimony on controverted facts, the allegations in the petition are taken as true only so far as they are sustained by recitals in the judgment and commitment attached to the petition as a part thereof.

7. **CONTEMPTS: Kinds.** Contempts of court logically arrange and divide themselves into four classes, namely, direct and indirect, civil and criminal.

8. ———: Criminal. Criminal contempts embrace all acts committed against the majesty of the law, and the primary purpose of their punishment is the vindication of public authority.

9. ———: **Civil.** A civil contempt is where a person fails or refuses to do something he has been ordered to do, or has done something he has been ordered not to do, for the benefit of another. Its object is punishment for the purpose of coercing performance of an act remedial in its nature.

10. ———: **Direct.** A direct contempt is one committed in the face of the court, and may consist of many kinds of conduct tending to defeat or impair the administration of justice—some of which are specified in the opinion.

11. ———: **Indirect.** An indirect or constructive contempt is one offered elsewhere than in the presence of the court, and which tends by its operation to degrade or make impotent the authority of the court, or in some manner to impede or embarrass the due administration of justice.

12. ————: **Criminal: Appeal.** Where the contempt is a criminal one, and the punishment adjudged is a judgment in a criminal case, no appeal lies and no writ of error goes.

13. ————: ————: ————: **Relief: Habeas Corpus.** Where no statutory right of appeal exists or writ of error lies, against punishment for a criminal contempt adjudged as a judgment in a criminal case, courts having superintending control are astute and diligent in granting relief by inspecting records under writs of *certiorari* or *habeas corpus*.

14. ————: **Direct: Hearing.** Direct contempts may be punished, at common law and under the statute, on view, *instanter*, without notice or hearing.

15. ————: **Indirect: Due Process: Hearing: Habeas Corpus.** If the contempts charged in the judgment were indirect or constructive, the contemner, both at common law and under the statute, was entitled to notice, reasonable time and a hearing. And if these were denied him, he was condemned without due process of law, and on *habeas corpus* will be discharged.

16. ————: ————: ————: **Statutes: Declarative of Common Law.** Our contempt statutes (sec. 1618, sec. 1616, et al.), are but declarative of the common law in respect to the right of the contemner to notice and a hearing, and being such, questions relating to their constitutionality need be given little attention. [Distinguishing State ex inf. v. Shepherd, 177 Mo. 205.]

17. ————: **Absence From Court: Indirect.** The intentional absence of an attorney for defendant from the court-room fifteen minutes after the court's announced time for convening, or fifty-five minutes after the jury panel was made up, to the delay and embarrassment of a criminal trial, is not a contempt committed in the presence of the court, and being an indirect contempt, if contempt at all, he cannot be punished without notice, and a hearing, etc. The absence of an attorney, a juryman, a witness, an officer (including even the judge), from the court-room at the precise time he is due there may be susceptible of many innocent explanations.

18. ————: **Notice: What Is.** The presence in court of the contemner when he was adjudged guilty of contempt, and his actual notice then and there for the first time of the proceeding against him, is not the notice contemplated by law. That means a reasonable notice—one fairly sufficient for him to prepare and make a defense to formulated charges.

19. ————: ————: **Sufficient Recitals in Record.** And where the judgment prepared by the judge himself contains no recitals of notice, formulated charges or a hearing, it will be presumed that there was no notice or hearing, although the judgment re-

In re Clark.

cites that "the court was of the opinion that said delay was intentional" and "doth find as a fact that said failure" of petitioner "to promptly return into court, and continue the trial of the above cause, which was then on trial, was wilful and in utter disregard of the authority of the court."

20. ———: **Void Judgment: Commitment.** And the judgment being void, the commitment is also void.

21. ———: **Absence From Court.** A wilful and unexplained absence from court of the attorney for defendant on trial, may be found, on due accusation, notice and hearing, to be contempt of court.

Habeas Corpus.

PETITIONER DISCHARGED.

*T. J. Rowe* and *Hiram N. Moore* for petitioner.

(1) It appears from the petition and return that petitioner was convicted without a hearing. The petition alleges that petitioner was denied a hearing, and the judgment fails to recite a hearing. Every valid judgment recites a hearing, and the validity of the commitment depends entirely upon the judgment. There can be no commitment without a valid judgment. Ex parte Arnold, 128 Mo. 256; Ex parte O'Brian, 127 Mo. 477; People ex rel. v. Baker, 89 N. Y. 460. (2) Section 1616, Revised Statutes 1899, provides that the court has power to punish, as for a criminal contempt, persons guilty of disorderly, contemptuous or insolent behavior in its immediate view, and presence; and section 1618 provides that such contempt and no other can be punished summarily. Absence from the court is neither disorderly behavior, nor contemptuous behavior, nor insolent behavior in the immediate view and presence of the court. The judgment fails entirely to show that petitioner's deportment, carriage, bearing, demeanor or manner was either disorderly, insolent or contemptuous. (3) Petitioner should be discharged for reasons following: First: The judgment is void,

because it covers two distinct offenses, and if he desired to pay one fine which he considered legal, and refused to pay the other which was illegal, he could not purge himself of the contempt by paying the legal fine and would be forced to pay the illegal one to save himself from imprisonment.   Second: Petitioner had twelve hours to make peremptory challenges, and it so appears on the face of the judgment, and therefore the facts as recited were not contumacious. Secs. 2619, 2621, and 2623, R. S. 1899.   Third: He was convicted without a hearing.   Fourth: The matters   recited in the judgment do not warrant a conviction.   In support of the foregoing propositions we cite the following authorities:  Ingle v. Hale, 8 Blackf. 574.   Contempt is in nature of a criminal proceeding.   Railroad v. City of Wheeling, 13 Gratt. 40; Ruhl v. Ruhl, 24 W. Va. 279; Ficher v. Hayes, 6 Fed. 63; Brown on Jur. (2 Ed.), 404, 400, 115; In re Dill, 49 Am. Rep. 505; Elerbe case, 13 Fed. 530; U. S. v. Berry, 24 Fed. 783; Whitmann v. State, 36 Ind. 216; Leach's case, 51 Va. 630.

*Arthur N. Sager* and *Grant Gillespie* for respondent.

(1)  Relator sued out a writ of habeas corpus in the St. Louis Court of Appeals, which was decided June 25, 1907, and the prisoner remanded to the custody of the sheriff.   Special attention is invited to this opinion as it was based upon the same facts as is this case.   (2)  A court of record has authority to punish summarily for contempts committed within its presence.   Green Co. v. Rose, 38 Mo. 390; State ex inf. v. Shepherd, 177 Mo. 205.   (3)  Section 1616, Revised Statutes 1899, has been declared unconstitutional, therefore, the common law prevails.   State ex inf. v. Shepherd, 177 Mo. 205.   (4)  Under the common law a court of general jurisdiction was the sole judge of what constituted a contempt.   Crawford in re, 13 Q.

B. 613; Fernandez in re, 6 W. & N. 717; McAleece in re, 7 I. R. C. L. 146; Cobbett in re, 7 Q. B. 187; State ex inf. v. Shepherd, 177 Mo. 205. (5) The power of a court in habeas corpus to inquire into the legality of the commitment of one committed for contempt, is limited by the statute to the face of the commitment alone. Sec. 3576 and sec. 3579, R. S. 1899. (6) It was never intended to use the writ of habeas corpus as an appellate process, or to authorize a review of the action of the circuit court, which is a court of general jurisdiction, to determine whether petitioner was rightly or erroneously adjudged guilty of contempt. Ex parte Millett, 37 Mo. App. 82; In re Coppenhaver, 118 Mo. 377; Ex parte Gfeller, 178 Mo. 248; Ex parte Kneger, 7 Mo. App. 368; Ex parte Crenshaw, 80 Mo. 477; Ex parte Mason, 16 Mo. App. 41; State ex inf. Walker v. Dobson, 135 Mo. 1; Ex parte Goodin, 67 Mo. 637. The cases of Ex parte Arnold, 128 Mo. 256, and Ex parte O'Brian, 127 Mo. 477, are not applicable to the case at bar. There is a vast difference between courts of limited and courts of general jurisdiction. (7) As to what constitutes a sufficient commitment, see: Ex parte Haley, 37 Mo. App. 562; Ex parte Haley, 99 Mo. 150. The commitment in this case recites that the offense was committed in the presence of the court, that the court found as a fact that the action of the relator in delaying the court was wilful and an utter disregard of the authority of said court and further adjudged the said relator guilty of contempt and sets out the punishment which is within the limits prescribed by law and it is to this commitment alone that the appellate court is confined under the statutes cited, in determining the legality or illegality of the imprisonment of relator Clark. (8) It has been argued by counsel for relator that if a contempt was committed, it was not in the presence of the court. We are unable to agree with them on this proposition under the circumstances in this case.

Mr. Clark appears in court and a trial is begun. The court sees him leave the court room. The court sees and knows of its own knowledge he is absent without its authority and sees and knows the proceedings of the court are stopped on account of his absence, and then the court sees him return and the proceedings begin on his return. It is not what Clark, the relator, did while absent from the court room, but the fact of his delaying the proceedings of the court by his wilful conduct in absenting himself during the progress of the trial. (9) The Supreme Court in the Shepherd case (177 Mo. 234), having declared section 1616, Revised Statutes 1899, unconstitutional, and having announced that the law is well settled that the Legislature has no power to take away, abridge, impair, limit, or regulate the power of courts of record to punish for contempts, and that the common law power still exists, then the proviso contained in section 3579, Revised Statutes 1899, which reads: "but nothing in this section contained, nor any other part of this chapter, shall be so construed as to prevent any prisoner from being discharged when the matter alleged in the order of commitment shall not, in point of law, amount to a contempt," would also be unconstitutional for the reason that at common law each court of general jurisdiction was the sole judge of what constituted a contempt, and being the sole judge of what constituted a contempt, and being the sole judge passing on the facts, the Legislature could not require the facts set out in a commitment in order that it might be ascertained whether or not such facts constituted a contempt, in point of law, because at common law it was not necessary to set out in the commitment the facts constituting the contempt.

LAMM, J.—Willis H. Clark, a member of the St. Louis bar, was fined for two separate contempts by the judge presiding in division 11 of the circuit court of

that city. His person being seized under one mitti-mus issued on an omnibus judgment covering both fines, he sued out a writ of *habeas corpus* from this court. Such writ went, directed to Louis Nolte, sheriff of the city of St. Louis, commanding him to produce the body of said Clark before this Court In Banc at a date named.

## STATEMENT OF THE CASE.

Attached to the petition and return of the sheriff are certified copies of the commitment on which peti-tioner is held ("Exhibit A") and of the judgment on which it issued ("Exhibit B"). As will hereafter ap-pear, the cause is taken as submitted on the pleadings. This being so, it will be well to set forth the judgment, the petition and the return in full, giving the pith of the commitment and the reply to the return to round out the statement of the case.

The commitment follows closely the recitals and narrations of the judgment. If it vary at all, it is by way of condensation. Therefore, it need not be set forth. The curious may find it in full in *In re* Clark, 103 S. W. 1105.

The judgment, on which the commitment issued as an execution, follows: .

### "EXHIBIT B."

"State of Missouri, Plaintiff, v. August Wilkins, De-fendant; Willis H. Clark (Attorney for Defend-ant), Respondent. No. 44 to the April Term, 1907.

"Whereas, the above cause wherein the State of Missouri is plaintiff and August Wilkins is defend-ant, pending in Division No. Eleven of the Circuit Court of the City of St. Louis, was set for trial in said court on Monday, May the sixth, 1907, the respondent, Willis H. Clark, a member of the bar of the city of St. Louis, and an attorney at law practicing in said

court appearing for the defendant, and thereupon said cause being called for trial the defendant, by his said attorney, announced that the defendant was not ready for trial; and thereupon the court granted said defendant and his said attorney until two o'clock p. m. of day to prepare and present his application for a continuance under the statute in such cases made and provided; and

"Whereas, thereafter, at two o'clock p. m. on said sixth day of May, 1907, said Willis H. Clark, as attorney for the defendant in said cause, presented his duly verified application for a continuance, which application, after due consideration by the court, was overruled; and thereupon the said Willis H. Clark, as attorney for said defendant, August Wilkins, requested the court for a short time to enable the defendant to secure the presence of certain witnesses, and in pursuance of such request the court thereupon granted the defendant until Thursday, May ninth, 1907, at ten o'clock a. m.; and thereupon the cause was laid over until said last-mentioned day; and

"Whereas, on Thursday, May 9th, 1907, at ten o'clock a. m., said cause being called again for trial, it was made to appear to the court that said Willis H. Clark was engaged in the trial of a case in Division No. Twelve of said circuit court of the city of St. Louis, and thereupon the above cause of the State of Missouri v. August Wilkins, was laid over until five o'clock p. m. of said date, and notice thereof was given to the respondent, Willis H. Clark, of such setting; and

"Whereas, said Willis H. Clark appeared in this court at five o'clock p. m., the court then being in session, and requested that the above cause be laid over until nine o'clock a. m., Friday, May tenth, 1907; and thereupon, at the request of said Willis H. Clark, the above cause was laid over until Friday, May tenth, at nine o'clock a. m.; and

208 Sup—9

"Whereas, the above court duly convened and was duly opened for business at nine o'clock a. m.; and

"Whereas, said court was compelled to wait and did wait until nine-fifteen (9:15) a. m. because of the absence of said Willis H. Clark and because of his failure to attend court at nine o'clock a. m.; and

"Whereas, said Willis H. Clark, by reason of his failure to be present at nine o'clock a. m. on said tenth day of May, 1907, delayed the court and interfered with the proceedings of said court by his failure to be so present,

"Whereas, the court was of the opinion that said delay on the part of said Willis H. Clark was intentional;

"It is therefore adjudged by the court that said Willis H. Clark was and is guilty of contempt of this court by reason of his willful failure to be present in court on the calling of said case. It is therefore ordered and adjudged by this court that said Willis H. Clark by reason of his said conduct was guilty of contempt of the authority of this court committed in its presence on this tenth day of May, 1907; and

"Whereas, after the jurors (to the number of thirty-four) were duly examined on their *voir dire* in the above-entitled cause, wherein the State of Missouri is plaintiff and August Wilkins is defendant, said defendant being represented by said Willis H. Clark, as his attorney, and while the court was in session, waiting upon counsel acting in behalf of the State and in behalf of the defendant, to make their challenges, the said Willis H. Clark asked leave of court to leave the court room for not to exceed ten minutes, until he could get a case, in which he was counsel, then pending in the St. Louis Court of Criminal Correction, passed or continued; and thereupon the court granted said Willis H. Clark leave to absent himself for a few minutes for the purpose of having the case pending in said

St. Louis Court of Criminal Correction passed or continued; and,

"Whereas, the court did excuse said Willis H. Clark for the purpose aforesaid at ten-forty (10:40) o'clock a. m.; and

"Whereas, said Willis H. Clark did not return into this court until eleven-thirty-five (11:35) a. m., and then announced to this court that he had been engaged in trying a cause in the St. Louis Court of Criminal Correction; and,

"Whereas, said Willis H. Clark delayed the trial of said cause of the State of Missouri v. August Wilkins for the space of fifty-five minutes without just reason or excuse; and,

"Whereas, this court doth find as a fact that said failure on the part of said Clark to promptly return into court and continue the trial of the above cause, which was then on trial, was willful and in utter disregard of the authority of this court; and,

"Whereas, said Willis H. Clark was by reason of his conduct aforesaid, guilty of contempt of this court by such misconduct in its presence;

"It is therefore ordered and adjudged that said Willis H. Clark by reason of his said conduct was and is guilty of contempt of the authority of this court, committed in its presence on this tenth day of May, 1907, and it is further ordered that said Willis H. Clark for the first offense above mentioned be fined, and he is hereby fined, the sum of ten dollars; and it is further ordered that said Willis H. Clark be fined, and he is hereby fined, for the second offense or contempt above mentioned the sum of twenty dollars.

"And it is further ordered and adjudged that the said Willis H. Clark for his said contempts of court, as aforesaid, shall pay to the Satte of Missouri for the use of the city of St. Louis the fines above mentioned aggregating the sum of thirty dollars on or before

the fourteenth day of May, 1907, and in default of the payment of said sum that he be committed to the jail of the city of St. Louis until said sum shall have been paid.

"And it is further ordered that a certified copy of this order under the seal of the court be process and warrant for executing this order."

The petition for the writ follows:

"To the Hon. Judges of

the Supreme Court of Missouri:

"The petition of Willis H. Clark respectfully shows that he is wrongfully imprisoned, detained and restrained of his liberty by Louis Nolte, sheriff of the city of St. Louis at the city of St. Louis, Missouri; that said imprisonment, detention, confinement and restraint are illegal and the illegality thereof consists in this, to-wit: That the only pretext or cause of such arrest and detention is by virtue of a judgment and order made by the Hon. Moses N. Sale, Judge of Division 11 of the Circuit Court of the City of St. Louis, State of Missouri, on the 10th day of May, 1907, in a certain cause then pending in said circuit court of the city of St. Louis, wherein the State of Missouri was plaintiff and August Wilkins was defendant, and a commitment issued thereon by the clerk of said circuit court on the 14th day of May, 1907, upon said judgment and directed to said Louis Nolte, sheriff of the city of St. Louis, a copy of which said judgment and commitment are hereto annexed and made a part of this petition; that said commitment was delivered to said Louis Nolte, sheriff of said city, and that on the 14th day of May, 1907, he executed the same by arresting this petitioner and he by virtue of the same and not otherwise, arrested this petitioner and yet holds him in custody thereunder; that said order, judgment and commitment were illegally and improperly made in this, that said order, judgment and commitment were made

by the said Moses N. Sale, judge of the said circuit court, without a notice to petitioner of the accusation against him, and without a hearing, and that the order, judgment and commitment are null and void because the same were made without notice to petitioner of the accusation against him, and without a hearing; and that the said circuit judge was without authority and jurisdiction to render said judgment and said judgment and commitment are in violation of section one, article 14, of the Constitution of the United States, and section 30, article 2, of the Constitution of Missouri, because they deprive petitioner of his liberty without due process of law.

"That said judgment and commitment are illegal because your petitioner immediately after he had been adjudged guilty of contempt of court without a notice or hearing on May 10th, 1907, as aforesaid, requested the court to grant him a hearing, and his said request was denied, which said fact he is ready to verify. Your petitioner says that said judgment and commitment are illegal, null and void because petitioner was guilty of no misconduct in the presence of the court, and the recital in the said judgment and commitment that petitioner was guilty of misconduct in the presence of the court, is false, and by reason of said fact the circuit judge had no power, authority or jurisdiction to punish him for a criminal contempt without a notice and hearing. That said judgment and commitment are illegal, null and void because said judgment was rendered in the case of State of Missouri v. August Wilkins; that said judgment is illegal, null and void because petitioner is, in one judgment, adjudged to be guilty of two separate and distinct criminal contempts committed at different times.

"That said judgment and commitment are null and void because your petitioner was not guilty of a crim-

inal contempt of said circuit court or the judge thereof, and that the matters and things as recited in said judgment do not in law constitute a criminal contempt of said circuit court or the judge thereof. Your petitioner says that the recital in said judgment, 'Whereas the court was of the opinion that said delay on the part of said Willis H. Clark was intentional,' was not supported by any evidence, and the court had no evidence upon which to base same and there was nothing that occurred during the trial of said case of State v. Wilkins to authorize such finding of fact and that said finding that the absence of the petitioner was intentional, is false — all of which your petitioner is ready to verify. Your petitioner says that he was attorney for August Wilkins and that said August Wilkins was on trial on May 10th, 1907, for the alleged offense of sodomy, and that under the law he had twelve hours to make his peremptory challenges, and that said defendant did not waive his said right and that petitioner as attorney for said Wilkins did not receive the peremptory challenges made by the State until about eleven-twenty-five a. m. on May 10th, 1907, and that ten minutes thereafter he made his peremptory challenges, and that the finding of fact in said judgment that petitioner delayed the trial of said cause of State of Missouri v. Wilkins fifty-five minutes without just reason or excuse, is false; and that the finding of fact in said judgment that the failure on the part of petitioner to continue the trial of said cause was willful and in utter disregard of the authority of the court was made without a hearing and without evidence to support same, and is false; all of which said facts petitioner is ready to verify.

"That as to the first of said alleged contempts, petitioner states the facts to be as follows:

"That on May 8th and 9th, 1907, petitioner was actually in attendance and engaged as counsel for de-

fendants in the case of the State of Missouri v. Harry Lipschitz and Max Shapiro, then on trial in Division No. 12 of said circuit court; that said case continued so to be on trial and was not concluded until 10:30 p. m. on said May 9th; that consequent upon the physical and mental strain of said trial and his mental stress over the adverse result thereof, and his contemplation of unfavorable conditions in said case of State of Missouri v. August Wilkins, to be placed on trial in said Division No. 11 of said circuit court on said May 10th, 1907, petitioner, on the night of said May 9th, 1907, having retired about 11:30 p. m., became afflicted with insomnia and was unable to sleep until nearly daylight of said May 10th, but finally fell into an unrefreshing slumber, from which he awakened at 8:20 a. m. on said May 10th, 1907; that then having about three miles travel to reach Division No. 11, petitioner arose and dressed hurriedly and without taking breakfast or even a swallow of coffee, rushed to the street car in order to be present in said Division No. 11 at nine o'clock a. m.; that petitioner arrived at his transfer point, about one mile from the court, at 8:53 a. m., but the connecting car was delayed; that after waiting several minutes for said connecting car, petitioner started to walk to the court, and got within four blocks or about a quarter of a mile thereof when overtaken by said connecting car, which he then boarded and proceeded to the court room of Division No. 11, after stopping less than one minute to leave word as to his whereabouts at his office, directly across the street from said court room; that according to petitioner's watch, which he afterward found to be correct within thirty seconds, it was 9:09 a. m. when petitioner entered the court room, and according to the clock in said court room it was 9:13 a. m., said clock being between three and four minutes fast, as afterwards verified by petitioner.

"That as to the second of said alleged contempts, petitioner states the facts to be as follows:

"That on May 6th, 1907, petitioner was counsel in cases pending and for trial in two different courts of record in said city of St. Louis, to-wit, the St. Louis Court of Criminal Correction and said Division No. 11 of said circuit court; that anticipating a conflict in the requirements for his presence in said different courts, petitioner secured a continuance of the case in which he was counsel in said St. Louis Court of Criminal Correction, in order that he might be free to attend to said case of August Wilkins in said Division No. 11, and said case in said St. Louis Court of Criminal Correction was then reset for May 10th, 1907, at ten o'clock a. m., upon the express understanding and agreement of counsel that said case would be called and tried on said day; that thereupon petitioner appeared in said Division No. 11 and answered in said case of August Wilkins and was compelled to ask a continuance thereof because of the absence of several material witnesses for defendant; that the court denied said application for continuance, but reset said cause for May 9th, 1907, at 10 o'clock a. m., to afford defendant further opportunity to secure his witnesses; that on said May 9th, throughout the entire day and until 10:30 at night, except for two short recesses for meals, petitioner was actually engaged in the trial of said case begun in said Division No. 12 on May 8th; that upon arriving in said Division No. 11 as before stated, on said May 10th, petitioner proceeded to examine for the defendant thirty-four jurors presented for *voir dire* examination in said case of August Wilkins, charged with the offense of sodomy, and such examination was concluded on both sides about 10:15 a. m.; that thereupon petitioner informed the court as to the pendency of said cause in said St. Louis Court of Criminal Correction and as to the need of petition-

er's presence in said court, and left said Division No.
11, with the full knowledge and consent of the judge
thereof, for the purpose of attending to said case in
said St. Louis Court of Criminal Correction, then sit-
ting less than one hundred feet from the court room
of said Division No. 11; that at said time the challenges
for the State in said case of August Wilkins had not
been announced or notice thereof given to either peti-
tioner or the defendant, and said challenges for the
State were never communicated to petitioner in any
way until after his return to said Division No. 11, about
forty minutes later, although it was known to the
court and to counsel for the State that petitioner dur-
ing such interval was within one hundred feet of said
Division No. 11, and the defendant, as petitioner then
knew, was then entitled under the provisions of sec-
tion 2623 of the Revised Statutes of 1899 of Missouri,
to an interval, upon his demand, of twelve hours in
which to determine upon his challenges; that it had
been previously agreed between counsel in said case in
said St. Louis Court of Criminal Correction, that said
case, upon petitioner's appearance in said court, should
be called out of regular order, with the consent of the
court, and thereupon disposed of by a summary trial,
as provided in the act creating said court, which pro-
ceeding would reasonably require from fifteen to twen-
ty-five minutes; that when petitioner did so arrive,
another case was on trial and counsel in petitioner's
case were delayed about twenty minutes before they
could get said case called; that thereupon petitioner
proceeded with said case and after bringing to a point
where he could be spared, petitioner left before said
trial was completed and immediately returned to said
Division No. 11, where he resumed his labors in said
case of August Wilkins.

"Petitioner states that his aforesaid absences from
said Division No. 11 were solely under conditions as

aforesaid and that he had no intention or desire whatever to exhibit disrespect or want of regard for the court or to hinder or delay its proceedings.

"Petitioner further states that no judicial notice of either of said alleged contempts was taken by the court at the time of the occurrence thereof and not thereafter until nine p. m. of said May 10th, and that meanwhile three adjournments or recesses of said court were had; that no notice whatever of any proceeding against him for any alleged contempt was given petitioner; that at said hour of nine p. m., petitioner was called before the bar of said court, without previous notice of any kind and without being accorded a hearing of any kind, was declared by the judge of said court to be in contempt and said fines assessed against him; that petitioner then and there requested and demanded that he be given a hearing and an opportunity for explanation and to purge himself of contempt, if any contempt appeared, but that such request and demand was denied him and he was told that he might go ahead and say what he wanted to, but it would make no difference, as the fines would stand just the same.

"That no application for the relief sought has been made to or refused by any court officer or officers superior to this Honorable Judge.

"Your petitioner says that the judgment and commitment aforesaid are illegal, null and void because, 1stly, the judgment was rendered in the case of State v. Wilkins and covers two distinct offenses; 2ndly, petitioner was convicted without notice, trial and hearing; 3rdly, the recitals and findings of fact upon which the judgment is bottomed are false; 4thly, because the matters recited in the judgment do not authorize a conviction, and 5thly, because upon all the facts petitioner was not guilty of any contempt of court.

"WHEREFORE, your petitioner prays that a

writ of *habeas corpus* be granted directed to Louis Nolte, sheriff of the city of St. Louis, commanding him to have the body of petitioner before the Honorable Supreme Court at a time and place therein to be specified, to do and receive what shall then and there be considered by your Honors concerning him, together with the time and cause of his detention and said writ and that petitioner may be restored to his liberty.

"Willis H. Clark, Petitioner."

Which petition was verified by affidavit.

The writ was in conventional form and need not be set forth.

The return thereto follows:

"I, Louis Nolte, Sheriff of the City of St. Louis, Missouri, for my return to the writ of *habeas corpus* issued in the above cause, state that the petitioner, Willis H. Clark, the person named in said writ, was committed to my custody by virtue of a certain warrant of commitment, duly issued out of the circuit court of the city of St. Louis, State of Missouri, on the fifteenth day of May, 1907, under the hand of Adolph Nast, Clerk of the Circuit Court for Criminal Causes, and under the seal of said circuit court, city of St. Louis, State of Missouri,—a certified copy of which warrant of commitment is hereto attached, marked 'Exhibit A,' and made a part of this return.

"And this respondent further shows to this Honorable Court, that the said warrant of commitment under which this respondent now holds in custody the said Willis H. Clark, was issued in pursuance of and based upon an order and judgment of said circuit court of the city of St. Louis (Div. No. 11 thereof), against said Willis H. Clark, for contempts committed in the immediate view and presence of said circuit court, City of St. Louis (Div. No. Eleven thereof), as set forth in said order and judgment of said circuit court, —a duly certified copy of which order and judgment

is herewith filed as part of this return and marked 'Exhibit B.'

"Nevertheless, in obedience to the writ of *habeas corpus* issued herein, I, the said sheriff of the city of St. Louis, now produce the body of the said Willis H. Clark before this Honorable Court, to be dealt with according to law, this the 1st day of July, 1907.

"LOUIS NOLTE,

"Sheriff of the City of St. Louis, Mo."

To the return petitioner replied denying that the judgment was for contempts "committed in the immediate view and presence of the Judge of Division 11 of the circuit court of the city of St. Louis," and amplified the foregoing denial by restating the gist of his petition in that behalf. Petitioner then asked that a commissioner be appointed by this court to take testimony on the controverted questions of fact.

The circuit attorney of the city of St. Louis, on behalf of the sheriff, thereupon filed a certified copy of a decision rendered in the St. Louis Court of Appeals on petitioner's earlier application to that court for a writ of *habeas corpus* on the same facts; and further suggested that Division 11 of the circuit court of the city of St. Louis was a court of general jurisdiction; that its judgment and commitment could not be attacked collaterally on application for a writ of *habeas corpus*, and therefore, no order appointing a commissioner to take evidence should go.

The cause being set for hearing, petitioner appeared by counsel and submitted it here on brief and oral argument. Neither in the one nor the other was the appointment of a commissioner to take testimony pressed. To the contrary the cause was submitted, by necessary implication, on the theory that the facts essential to determine the issues are disclosed by the judgment and commitment; and that the crucial question for our determination resolved itself into a matter

of law. This being so, we shall treat the case as though the application for the appointment of a commissioner was withdrawn or waived, and as if the case stood on a motion for judgment on the pleadings.

## OPINION.

I.   It is well to fetch a compass and eliminate certain questions injected into the case but not deemed germane to it in the form submitted.   For instance:

(a)   A portion of the brief of petitioner's counsel formulates and supports, by argument and authority, the proposition that in a proceeding by *habeas corpus,* seeking the discharge of a person held under a judgment and commitment for contempt, the jurisdiction of the committing court or magistrate cannot be sustained by false recitals of the existence of the facts upon which jurisdiction depends—that is, that, in such case as this, no court or officer can acquire jurisdiction by mere *ipse dixit,* the bare and bald assertion of it. We are cited to *Ex parte* O'Brien, 127 Mo. 477, as sustaining that proposition.   It is obvious, however, that when petitioner waived the appointment of a commissioner to take testimony on controverted facts, the case at once took the from of a submission on facts not longer controverted, to-wit, the narrations of the judgment and commitment.   Hence it is that the contention in hand, whether sound or unsound, well or ill in a proper case, is out of the case.

(b)   Somewhat akin to said contention is another, viz.: that we should look into facts *dehors* the record because (it is said) Division 11 of the circuit court of the city of St. Louis is not a court of general jurisdiction, proceeding according to the course of the common law, and, therefore, not entitled to the presumptions attending the   proceedings of all such courts.   This contention must also be put to one side, because:   (1) In the first place, as said, there are no facts here *dehors* the record.   Petitioner by waiving an order for

the appointment of a commissioner to take testimony to establish such facts, if any, thereby elected to go on without them — *i. e.*, he elected to stand on the record facts — if stand he can at all. Having made that election he must abide it, he must stand there — he cannot leap over and stand elsewhere. (2) In the second place, Division 11 is in very fact, as its name indicates, but a division of the circuit court of that city, and, hence, to all intents and purposes a court of general jurisdiction. The mere fact that in matter of detail in the administration of justice certain criminal cases are assigned to it and that such assignment is heavy enough to occupy, peradventure, its whole time, does not lop off or dim its power as a constitutional court — a circuit court proceeding according to the course of the common law. [Const., art. 6, sec. 1; *Idem*, secs. 22, *et seq.; * Ann St. 1906, pp. 4904-5; Laws 1903, p. 142; Laws 1905, p. 127.] The petitioner relies on decisions relating to judgments of the court of criminal correction, a court of limited statutory jurisdiction, and therefore not in point.

(c)   The circuit attorney brings to our attention the decision of the St. Louis Court of Appeals denying petitioner his discharge from the same judgment and commitment challenged here. [*In re* Clark, 103 S. W. 1105, not yet officially reported.] It goes without saying that, with this court, a decision bearing the hallmark of a court of so high authority as the St. Louis Court of Appeals passes current as persuasive and instructive. We do not understand the circuit attorney to make the out-and-out contention that the decision in question rises to the plane of *res adjudicata;* but if such be his position, impliedly or by indirection, it is not sound. A plea of estoppel by record in a *habeas corpus* case is good on the same facts where the prisoner has been discharged, but is bad where the prisoner has been remanded, as here. This is so because judges

may be likened unto priests attending between the horns of the altar in the Temple of Justice. So attending, they stand solemnly charged with keeping the lamp of personal liberty in oil, well trimmed and brightly burning. It is so because the liberty of the citizen is an immediate jewel of the law to be sacredly cherished and hedged about withal. Therefore, no mere legal fictions, good for use in matters of less moment, or matter of punctilio, or comity between courts, may shield any one restraining an American citizen of his liberty from having the *why* and *wherefore* of that restraint summarily looked into by any court of competent jurisdiction in the land. The discretion of one judge in remanding the prisoner does not bar the discretion of another in discharging the prisoner on *habeas corpus.* Wherefore, when the great writ goes down—a writ whose origin is beyond the dawn of English history, whose final and triumphant establishment was a landmark in the evolution of civil liberty, making the hearts of its lovers leap for joy to the prisoner, the doors of jails open, he comes into court with his shackles dropped and the cause of his imprisonment, the very marrow of it, is laid bare to the utmost verge and *minutiae* permitted by written law. And this, too, no matter what court has theretofore denied relief, unless it be a court of superior jurisdiction. [R. S. 1899, sec. 3546.]

In Weir v. Marley, 99 Mo. l. c. 488, *et seq.*, BRACE, J., speaking, said: "That the doctrine of *res adjudicata* is not applicable to the case of a refusal to discharge, and that the prisoner is entitled to the opinion of all the courts or officers authorized in a given cause to issue the writ as to the legality of his imprisonment, is conceded, and is not limited in this State by statutory enactment except in the one particular that the applicant for the writ in his petition must state 'that no application has been made or refused by any court

officer or officer *superior* to the one to whom the peti-
tion is presented.' Subject to this limitation, one re-
strained of his liberty may in succession apply to every
court or officer authorized to issue the writ, notwith-
standing another court or officer having jurisdiction
may have refused to issue it or to discharge him from
such restraint, 'and from such refusal no appeal will
lie,' as was held in Howe v. State, 9 Mo. 691, the rea-
son assigned in that case being that 'the refusal to
grant a discharge is not a final judgment from which
an appeal will lie to this court.' . . . From these
cases may be deduced the doctrine that the principle
of *res adjudicata* does not apply in cases of *habeas
corpus* to judgments remanding the prisoner, or to
judgments discharging the prisoner, where a new state
of facts, warranting his restraint, is shown to exist
different from that which existed at the time the first
judgment was rendered. That it does apply to a judg-
ment discharging a prisoner, where no such new state
of facts is shown, may as readily be deduced from the
case of *Ex parte* Jilz, 64 Mo. 205. The distinction thus
made between judgments remanding, and those dis-
charging the prisoner, grows out of the nature of the
writ whose *raison d'etre* is the protection of personal
liberty.'' [See, also, *In re* Boutelle, 124 Mo. App.
450.]

With the foregoing matters eliminated, the case
may proceed on the theory that the allegations of the
petition are taken as true only so far as sustained by
the recitals in the judgment and the commitment, but
without any bar arising from the adverse decision
of the Court of Appeals.

II.   Contempts logically arrange and divide them-
selves into four classes, viz., direct and indirect, civil
and criminal.

It has been said generally that criminal contempts
embrace all acts committed against the majesty of the

In re Clark.

law, and the primary purpose of their punishment is the vindication of public authority.   [See authorities, *infra.*]

On the other hand, a civil contempt is where a person fails or refuses to do something which he has been ordered to do or has done something he, has been ordered not to do for the benefit of the opposite party to a cause.   In civil contempts the object of the punishment is for the purpose of coercing the performance of an act remedial in its nature.   [See authorities, *infra.*]

A direct contempt has been defined as a contempt *in facie curiae* — *i. e.,* literally, in the face of the court. It may consist in "noisy or tumultuous conduct in the presence of the court, or so near thereto as to interrupt its proceedings; or an open defiance to its just powers or authority; or in disrespectful behavior or language to the presiding judge; or any improper conduct tending to defeat or impair the administration of justice."   [7 Am. and Eng. Ency. Law (2 Ed.), *Tit. "Contempt,"* pp. 27-29; State *ex rel.* v. Bland, 189 Mo. l. c. 206, *et seq.*]   Circumspection should be used to seek and apply proper limitations upon that class of cases covered by the   last clause of the definition of direct contempt.   Examples will show the restrictions.   For instance, under that clause, as pointed out by the learned authors of the foregoing treatise, it has been held that attempting in the witness room to deter a witness from testifying by offering him money is a contempt in the presence of the court.   [Savin, Petitioner, 131 U. S. 267.]   And held that approaching a juror in the presence of the court with the view of improperly influencing his action in the event he should be sworn in the case is a contempt in the presence of the court.   [Cuddy, Petitioner, 131 U. S. 280.]   And held that a newspaper reporter who conceals himself in the jury room for the purpose of taking notes of

208 Sup—10

the proceedings of the jury is a contempt committed in the immediate presence of the court. [Matter of Choate, 24 Abb. N. Cas. 430.]

An indirect or constructive contempt is defined as "one offered elsewhere than in the presence of the court, and which tends by its operation to degrade or make impotent the authority of the court, or in some manner to impede or embarrass the due administration of justice." [See authorities, first above.]

The contempts outlined in the judgment in the case at bar are plainly criminal contempts under the foregoing definitions. Being criminal contempts, the adjudged punishment is a judgment in a criminal case and no appeal lies and no writ of error may go. [State ex rel. v. Bland, supra.] Absent such remedy, what was said in that case (p. 207) is applicable here, to-wit, that where no statutory right of appeal exists or writ of error lies, courts having superintending control have been astute and diligent in granting relief by inspecting records under writs of certiorari or habeas corpus. [Ex parte O'Brien, supra; State v. Leftwich, 41 Minn. 42; In re Watts & Sachs, 190 U. S. 1.]

The next question is: Are the contempts charged in the case at bar direct or indirect? Observe, vital matter is involved in a correct answer to that question. For if they be direct contempts, they may be punished at common law, as well as under our statutes (sec. 1618) on view, instanter, without notice or hearing. In such case there is no prosecution, no plea nor issue upon which there can be a trial. [Ex parte Terry, 128 U. S. 1. c. 308, citing State v. Woodfin, 5 Iredell's Law, 199; Whitten v. State, 36 Ind. 196; 4 Stephens' Com. bk. 6, c. 15; Tidd's Prac. (9 Ed. London, 1828) 479-80; Ex parte Hamilton & Smith, 51 Ala. 66; People v. Turner, 1 Cal. 152.] In such cases, the court having hearing ears and seeing eyes, its personal knowledge takes the place of evidence and makes a trial an idle

ceremony. The violence may be stopped violently, as fire stops fire, or "like cures like."

If, on the other hand, the contempts charged in the judgment at bar be indirect or constructive contempts, the contemner, under our statutes (sec. 1618, *suprà*) and under the common law, as will presently be pointed out, is entitled to notice, reasonable time and a hearing, or else he is condemned without due process of law as defined in the books. [See Womach v. St. Joseph, 201 Mo. l. c. 482, *et seq.*] As will be seen, also, our statutes are but declarative of the common law in the foregoing respects, as in many others. Being so declarative (in all respects pertinent here) we need pay little attention to questions relating to their constitutionality, suggested by the circuit attorney.

We may digress far enough to point out that it is insisted by him that the scope, effect and purpose of State *ex inf.* v. Shepherd, 177 Mo. 205, was to strike down as unconstitutional the whole body of the written law on the subject of contempts. [R. S. 1899, secs. 1616, *et seq.*] But we do not so read that case. The statute (sec. 1616) enumerates certain forms of contempt and provides that in their punishment courts have power to punish the acts enumerated, "and no other." The contempt charged in the Shepherd case did not come within those enumerated by that statute. The precise question held in judgment in that case, therefore, was this: Was that statute preclusive, or had this court as a creation of the Constitution the inherent power at common law, of which it may not be shorn by statute, to punish as at common law for contempts known to the common law but on which the statute is silent? The broad language used in the case, measured by recognized canons of construction, must be read in the light of the case and facts held in judgment. This court, in effect, ruled that a constitutional court may go to the common law for its inherent power to punish all con-

tempts, recognized as such at the common law; and to the extent that the statute clipped such power, it was unconstitutional. That holding was right; but that case did not hold in judgment and, hence, is no authority for the proposition that those parts of the statute declarative of the common law were invalid as unconstitutional.

Recurring now to the question: Are the offenses recited in the judgment direct or indirect contempts? The complaint made and recited of the petitioner was his intentional absence from the court room to the delay and embarrassment of a trial in which the petitioner was engaged as counsel, fifteen minutes at one time and fifty-five at another. The petitioner himself was absent. His acts *ad interim* were likewise absent. His doings went with him. It would seem like an exquisite and palpable contradiction of terms to complain in one breath that the petitioner and his acts were *absent,* and in the next breath to say that such *absence* constituted a *presence;* that is, a contempt committed in the presence of the court. The absence of an attorney, a juryman, a witness, an officer (including even a member of the bench, himself) from the court room at the precise time due there may be susceptible of many innocent explanations. Each and every of these absences are of a kind and, hence, on a level, and none of these explanations are within the mere eyesight or earshot of any court of ordinary mortal endowments. These explanations can only come to the court by evidence *aliunde* his eye or ear, so that it would seem that *absence* ought not to be dealt with as essentially in the same class as things that happen in the view or hearing of the court. We think that is the more gracious and the better view, comporting with the good sense of the thing, comes well within the quoted definition of an indirect contempt, and is sustained by the reasoning of well-considered cases. For

example: *Ex parte* O'Brien, *supra; In re* Dill, Petitioner, 32 Kan. 668; *In re* Wood, 82 Mich. 75; Gordon v. State (Neb.), 102 N. W. 458; Indianapolis Water Co. v. Amer. Strawboard Co., 75 Fed. l. c. 975; *Ex parte* Robinson, 86 U. S. 505; *Ex parte* Terry, *supra.*

We hold, then, that the contempts charged against petitioner Clark are indirect contempts, if any.

III.     The next question is: Was petitioner condemned without notice, without a hearing, and therefore, denied due process of law? If it be assumed in the absence of specific narration that Mr. Clark was present in court when adjudged guilty of two several contempts, and had actual notice then and there of what was going on, yet such notice is not the notice contemplated by general law. Notice in contemplation of law means a reasonable notice, one fairly sufficient to prepare and make a defense; any other is but sounding brass and tinkling cymbal —is form, not substance. [State *ex rel.* Tedford v. Knott, . 207 Mo. 167, and cases cited; State *ex rel.* v. Maroney, 191 Mo. 531.] Nor is it the notice contemplated by statute law. [R. S. 1899, sec. 1618.] It will be observed from the sundry whereases and recitals in the judgment that the learned judge spreading it of record was in a mood to say what he had to say, every jot and tittle, in writing. His mind ran strongly to that course. Nor, apparently, was he in aught awed from the "career of his humor." In the actual presence of all that is set down, the presumption ought to be indulged (nothing appearing to prevent) that all the facts appear in black on white. By necessary inference, then, it appears by indirection there was ro notice, no formulated charges, no hearing, as the latter term is known to the law. Certainly a judgment that took note of fifteen minutes' delay at the morning sitting of the court would not neglect to note things of such pith and gravity as the

formulation of charges, the service of notice and a
hearing of evidence, if such things were *in esse*. True
it is the court used a terminology that, absent other
controlling reasons, might faintly indicate a hearing.
It says: "Whereas, the court was of the *opinion* that
said delay on the part of said Willis H. Clark was
intentional." It says: "Whereas, this court *doth
find as a fact* that said failure on the part of said
Clark to promptly return into court and continue the
trial of the above cause, which was then on trial, was
willful and in utter disregard of the authority of this
court." But it must be remembered that the finding
of the court was based on its theory that the contempt
was committed in his immediate presence, thereby ex-
cluding the idea of citation and evidence; and it must
not be forgotten that while the word "opinion," in
a close and strict sense, is used as a term indicating
a decision of a court upon pleadings and facts duly
presented in a cause, yet it is a word of so flexible
meaning as to indicate "notion," "idea," "view,"
and, broadly, one's opinions may mean one's "senti-
ments.". In the absence of the usual narrations of
notice and hearing (commonly appearing in all judg-
ments), it is sticking in the bark to say that such mat-
ter of substance may be inferred by saying, the "court
doth find," or by the use of the word, "opinion."
It is allowable to a drowning man, but not to a court
of justice, to grasp at straws. A judgment in con-
tempt, like a pyramid, should stand broadly on a base,
not on a small point or apex.

It only remains to say that in indirect contempts
the alleged contemner is entitled by statute to notice
of the accusation and a reasonable time to make his
defense. [Sec. 1618, R. S. 1899.]

Precisely so, also, runs the common law. Draw-
ing from the undefiled well of the common law, we
find it said by Blackstone (4 Bl. *286): "If the con-

tempt be committed in the face of the court, the offend-
er may be instantly apprehended and imprisoned, at
the discretion of the judges, without any further proof
or examination. But in matters that arise at a dis-
tance, and of which the court cannot have so perfect
a knowledge, unless by the confession of the party or
the testimony of others, if the judges upon affidavit
see sufficient ground to suspect that a contempt has
been committed, they either make a rule on the sus-
pected party to show cause why an attachment should
not issue against him, or, in very flagrant instances
of contempt, the attachment issues in the first in-
stance; as it also does if no sufficient cause be shown
to discharge; and thereupon the court confirms and
makes absolute the original rule. This process of
attachment is merely intended to bring the party into
court; and, when there, he must either stand com-
mitted, or put in bail, in order to answer upon oath
to such interrogatories as shall be administered to
him, for the better information of the court with re-
spect to the circumstances of the contempt. These
interrogatories are in the nature of a charge or accus-
ation, and must by the course of the court be exhib-
ited within the first four days," etc. [See, also,
Brown on Jurisdiction (2 Ed.), p. 402, and cases cited
in foot notes.]

So, that, if the statute be looked to, the judgment,
viewed from its four corners, is irregular and void
for lack of due process of law and resulting lack of
jurisdiction; if the common law be looked to, the same
conclusion must be reached. The judgment falling,
the commitment falls. The one is predicated of the
other.

We make no manner of doubt that a willful un-
explained absence from the court room, to the har-
assment and delay of the court in the orderly admin-
istration of justice in a case on trial, on the part of

an attorney at law (an officer of the court and, hence, a part of it) may be found to be contempt of court, on due accusation, notice and hearing; and nothing said herein must be taken as indicating a contrary view.

But in this case, for reasons set forth, the petitioner is entitled to his discharge—other questions discussed in briefs of counsel are reserved. His discharge is, accordingly, ordered.

All concur.