## In re JAY ELLISON, Appellant.

### Division One, April 2, 1914.

1. **CONTEMPT: Common Law: Statutory Modification.** The Missouri statutes in no manner attempt to shear the courts of their ancient power to protect themselves in the administration of justice, by the punishment of those who interfere with, obstruct, corrupt or contaminate its fountain or channels of purity and fairness. The clear legislative design was to limit the punishment to be imposed for contempts.

2. ———: ———: **Attempt to Influence Juror.** Courts of general jurisdiction still have the inherent power to punish for contempt any person who wilfully or wantonly attempts, by any means whatsoever, to improperly influence a juror in the impartial discharge of his duties as such, whether by conversation with or attempt to bribe the juror or to exert any undue influence over an officer charged with selecting jurors.

3. ———: ———: **What It Is to Influence Juror.** For an "attempt to influence a juror" to constitute contempt of court, the contemnor or his representative must approach the juror himself. It is not contempt of court for a person to approach an outsider and attempt to induce him to speak to a juror in behalf of a litigant or to use his influence with the juror, where such outsider does not speak to the juror or in any wise approach him or communicate with him. Other statutes provide for the punishment of such conduct.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick*, Judge.

REVERSED.

*Mytton & Parkinson* for appellant.

The judgment is absolutely void on the face of the record, because the punishment fixed, six months in the jail, is in violation of Sec. 3882, R. S. 1909. Ex parte Creasy, 143 Mo. 708.

*Frank B. Fulkerson* for respondent.

(1) The act charged constituted contempt at common law, and the statute not dealing with the matter, the common law is still in force. In re Clark, 208 Mo. 147; Railroad v. Gildersleeve, 219 Mo. 193; State v. Doty, 32 N. J. L. 403; 9 Cyc. 15. (2) It seems incredible that with all the difficulties attending the present ·day administration of justice courts should be deprived of the power to prevent tampering with jurors. If the Creasy case is ·not "the last word" on the subject of contempt, such as is alleged here, then this judgment should be affirmed. If the Creasy case is held to be controlling here, may we venture to ask if the pendulum of construction hasn't swung about ·as far to the right as the doctrine announced and applied in the Shepherd case had heretofore caused it to swing to the left. Even under the Creasy case, ·appellant not having served any part of his sentence, ·should be required to serve at least ten days thereof.

WOODSON, P. J.—The appellant was found .guilty of contempt. of court for an attempt to interfere with the administration of justice, and sentenced to imprisonment in the county jail for a period of ·six months.

In due time and in proper form the cause was ·timely appealed to this court.

The information filed against the appellant is in the following words and figures, to wit (formal parts ·omitted):

"It appearing to this court that Richard High-·smith has filed his affidavit in the case entitled Frieda Van Loon versus the St. Joseph Railway, Light, Heat ·and Power Company, numbered 17847, pending in this ·court, in which affidavit the said Richard Highsmith ·alleges that one Jay Ellison *attempted* to improperly influence the jury chosen to try said cause· during the ·trial thereof.

"Therefore, on the authority and by reason of said affidavit, the court does charge that one Jay Ellison, on the 10th day of July, 1911, at the city of St. Joseph, in Buchanan county, Missouri, and while the aforesaid case, entitled Frieda Van Loon v. St. Joseph Railway, Light, Heat and Power Company, was on trial and before the completion thereof, did contemptuously, improperly and unlawfully *attempt* to interfere with and to influence the said jury in this:

"That said Jay Ellison did on said 10th day of July, 1911, approach Richard Highsmith and did then and there *endeavor* to get an interview through Richard Highsmith with Otto R. Kendall, a member of said jury, and did then and there *endeavor* to get Richard Highsmith to do what he could with said Otto R. Kendall for Miss Van Loon, plaintiff in said cause, thereby *intending and* attempting to improperly and unlawfully influence said juror and through said juror the jury in said cause.

"This, therefore, is to notify you of said charge and to notify you to be and appear before this court, in Division No. 2 thereof, at the courthouse, in St. Joseph, Missouri, on the 3rd day of August, 1911, at 9:30 a. m., to show cause to this court, if any you have, why you should not be adjudged guilty of contempt and punished accordingly." (The italics are ours.)

In obedience to said citation, Ellison filed his return in words and figures, as follows, to wit (caption omited):

"Comes now Jay Ellison and in obedience to the command of this court heretofore made upon him by citation issued herein for his return and answer respectfully shows to the court and alleges:

"1. Defendant pleads not guilty to the charge of contempt made against him in said citation.

"2. Defendant denies that he at any time did contemptuously, improperly and unlawfully attempt to interfere with and influence the jury in the case of

Frieda Van Loon v. St. Joseph Railway, Light, Heat and Power Company.

"3. Defendant denies that he did on the 10th day of July, 1911, approach Richard Highsmith and then and there endeavor to get an interview with Otto A. Kendall, a member of the jury in the case of Frieda Van Loon v. St. Joseph Railway, Light, Heat and Power Company, and did then and there endeavor to get said Richard Highsmith to do what he could with said Otto A. Kendall for Miss Van Loon, plaintiff in said cause.

"4. Defendant further states that at no time did Frieda Van Loon or any other person, either by word, action or conduct, try to get defendant or induce defendant to interfere with or influence any member of the jury that tried the case of Frieda Van Loon v. St. Joseph Railway, Light, Heat and Power Company.

"5. Defendant further states that no action or conduct whatever of his had any bearing whatever in the verdict of the jury in the above mentioned cause, and that he in no way, shape or form endeavored to influence said jury or any member thereof in said cause.

"6. Affiant further states that he has never and does not now have any other than the highest respect for this court and the judge of Division No. 2, in whose court this case is now pending.

"7. Having answered the allegations contained in the citation herein issued, this defendant asks that he be permitted to introduce evidence in support of the allegations contained in this return to the citation and the allegations herein contained.

"Wherefore, this defendant asks to be discharged."

A trial was had upon the issues joined, and after hearing the evidence for and against the appellant, the court, as previously stated, found the appellant

In re Ellison.

guilty of the charge preferred, and sentenced him to the county jail for a period of six months.

Since the court found the issues of fact against the appellant, and there being an abundance of evidence introduced tending to support the findings, there remains nothing for this court to consider except the legal propositions governing the same.

Contempt:
Attempt to
Influence an
Outsider to
Influence Juror.

In approaching the discussion of this case some preliminary observations may not be out of place, and at the same time shed some light upon the views of the court in passing upon the propositions presented for adjudication.

In the first place, all courts, in all ages, in all civilized countries have discountenanced all outside interference and tampering with the administration of justice; and have assiduously endeavored to mete out justice according to the evidence introduced in open court, and the law as there enunciated. Of course there are sad exceptions to this rule, which bring the blush of shame to all states and nations whenever the finger of suspicion points to a venal judiciary; but this exception is and has always been so infinitesimal in comparison to the great and overwhelming desire of the courts to mete out full and exact justice according to law and equity, as they understand it, that the exception sinks into such insignificance that it is hardly worth mentioning, outside of the historical fact.

This desire of the courts has been so firmly fixed and embedded in the jurisprudence of this and all other civilized countries, that they have never, in the absence of legislation, failed to resort to all available means to protect the channels of justice from fraud, corruption and undue influence.

Without stopping to review the historical facts and the criticism to which they subjected the courts, it is sufficient to state that the intensity of that desire

often led the courts to resort to excessive punishment for such offenses.

This excessive abuse of authority upon the part of the courts, led to some radical legislation, both State and national, regarding contempt, as compared to what is known as the inherent or common law authority to punish parties guilty of that offense.

This idea is sufficiently outlined in the following cases: In re Clark, 208 Mo. 121; Railroad v. Gildersleeve, 219 Mo. 170; Ex parte Creasy, 243 Mo. 679.

In order to abrogate this excessive claim of authority, which was the growth of centuries, the statutes to be presently cited, in harmony with those of other States, were enacted; and in my opinion, the extreme power claimed by the courts, as announced in the case of State ex inf. v. Shepherd, 177 Mo. 205, shows the wisdom of those enactments.

One more preliminary observation: Counsel have not called our attention to any common law rule or adjudged case holding that a court has the authority to punish a party for an *attempt* to commit a contempt of court. This proposition, however, will receive further consideration later.

The statutes of this State previously mentioned are sections 3881, 3882 and 3884, and read as follows:

"Sec. 3881. *May Punish for Contempt*—Every court of record shall have power to punish as for criminal contempt persons guilty of: First, disorderly, contemptuous or insolent behavior committed during its session in its immediate view and presence, and directly tending to interrupt its proceeding, or to impair the respect due to its authority; second, any breach of the peace, noise or other disturbance directly tending to interrupt its proceedings; third, wilful disobedience of any process or order lawfully issued or made by it; fourth, resistance wilfully offered by any person to the lawful order or process of the court; fifth, the contumacious and unlawful refusal of any

person to be sworn as a witness, or, when so sworn, to refuse to answer any legal and proper interrogatory.

"Sec. 3882. *Punishment for Contempt*—Punishment for contempt may be by fine or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court; but the fine in no case shall exceed the sum of fifty dollars, nor the imprisonment ten days; and where any person shall be committed to prison for the nonpayment of any such fine he shall be discharged at the expiration of thirty days.

"Sec. 3884. *Commitment for Contempt*—Whenever any person shall be committed for any contempt specified in this chapter the particular circumstances of his offense shall be set forth in the order or warrant of commitment."

As was held in the case of State ex inf. v. Shepherd, supra, that the Legislature had no authority to shear the judiciary of any of its constitutional powers, yet it was in a measure held, in Ex parte Creasy, supra, that the Legislature had the authority to curtail or limit the so-called inherent or assumed authority of the courts, not expressly confirmed by the organic law of the State.

If we read the statutes previously set out, in the light of these observations, it will be seen that the Legislature in no manner attempted to shear the courts of their ancient power to protect its authority in the administration of justice, by the punishment of those who interfered with, obstructed, corrupted or contaminated the fountain or channels thereof.

Those statutes simply enunciated certain acts which, at common law, constituted contempt of court, and the clear design of the Legislature was to limit the punishment that should be imposed for their commission; but by a careful reading of the provisions thereof, it will be readily seen that the Legislature

did not have in mind, nor did it intend thereby, to curtail the authority of the judiciary to keep the fountain and channels of justice pure and unobstructed. That being unquestionably true, we must return to the common law, in order to ascertain what the power and authority of the courts were to punish persons guilty of such infamous crimes.

All of the authorities seem to agree that a court of general jurisdiction has the inherent authority to punish for contempt any person who wilfully or wantonly attempts, by any means whatsoever, to improperly influence a juror in the impartial discharge of his duties as such, whether by conversation, attempt to bribe or to exert any undue influence with an officer in the selection of the personnel of the jury. [9 Cyc. 16, par. 2, and cases cited.]

But after a careful reading of the numerous cases there cited I have failed to find a single case where the court has punished a person, as in this case, where he in no manner approached, discussed, or offered to bribe the juror or officer in person. In other words, the courts seem to attach to the words, ''to attempt to influence a juror,'' the meaning that the contemnor or his representative must approach the juror in person before the contempt is completed.

In the case at bar the appellant requested Highsmith to see the juror for him, but Highsmith never did so, nor did he ever intend to so do. That being true, the juror was not influenced, nor was he attempted to be influenced in his action as a juror; but the appellant attempted to have Highsmith to influence the juror, which he never did.

That conduct of appellant, in my opinion, after a careful consideration of all the authorities cited, and which I have been able to find bearing upon the subject, did not constitute contempt of court.

If, however, he or Highsmith, his representative, had approached the juror and had in any manner attempted to influence him, then clearly both of them would have been guilty of contempt; but under the facts as charged in the citation and established by the uncontradicted evidence, neither of them was guilty of contempt. These views are supported by the ruling of this court in the case of Ex parte Creasy, supra.

The Legislature evidently entertained the views here expressed, and in order to punish those who might be guilty of such misconduct enacted sections 4356, 4357 and 4894, Revised Statutes 1909, which have been in force for many years. These statutes cover this case as a glove covers the hand, and should be vigorously enforced whenever their provisions have been violated, as clearly appears in the case at bar.

We are, therefore, of the opinion that if the appellant is guilty of the charge stated in the citation he should be proceeded against under the sections of the statute referred to, and not by citation for contempt of court.

So believing, the judgment of the circuit court is reversed and the appellant is discharged. All concur.