BREWER *v.* STATE.

(Division B.  Nov. 9, 1936.)

[170 So. 540.  No. 32470.]

L. H. McGehee and F. D. Hewitt, both of McComb, and Green, Green & Jackson, of Jackson, for appellant.

**Wm. H. Maynard**, Assistant Attorney-General, for the state.

**Griffith, J.**, delivered the opinion of the court.

The evidence supports the following finding of facts: One Thomas had been indicted for murder and his trial was set for the first Monday, the first day of April, 1935. There had been a mistrial at a former term of the court. A special venire had been drawn on Friday, March 29, 1935, and had been promptly served. One of the jurors on this venire was Fred McCullough, who resided with his father, J. R. McCullough. Appellant was a friend of the accused; they had served together on the police force in the city of McComb. On Saturday afternoon, March 30, 1935, appellant went to the home of J. R. McCullough and stated that he was looking for the son Fred, and upon being told by the father that the son Fred was absent, appellant then stated to the father that he (appellant) wanted to talk to the son "about tying up the jury on the Thomas case." Appellant further stated that Thomas was financially helpless but that the officers of the town and county, including the sheriff, were putting up the money to fight the case, and for that reason there would not be very much in it for tying up the jury, but there would be some. The testimony of the father is further that he said to appellant: "Brewer, reckon you can do that," and that appellant replied: "I have done it before and we are going to do it this time." . . . "He (referring to appellant) asked me to tell Fred just what he said; that there would be something in it to tie it up, and I told him I would tell Fred."

The father did not tell the juror, his son, upon the son's return, of what had been said by appellant. The son knew nothing of it until he had served on the jury and had as a juror voted for the conviction of Thomas— although there was another mistrial, the jury voting eleven to one for conviction. On March 19, 1936, the district attorney filed, in the circuit court, an information in contempt, charging appellant with the stated

facts and prayed a citation to appellant and for a hearing upon said charge. Citation was issued, a hearing was had, and the court entered a judgment sustaining the charge and sentencing appellant to thirty days in jail.

The chief argument in behalf of appellant and for a reversal is upon the proposition sustained by some cases, in other jurisdictions, that an unsuccessful attempt to procure another to convey to a juror an offer of a bribe is not a contempt; that in order to constitute a contempt there must be a personal contact by the contemnor with the juror himself. And among others, In re Ellison, 256 Mo. 378, 165 S. W. 987, and U. S. v. Carroll (D. C.), 147 F. 947, are cited in support of this contention. We decline to follow this line of cases, but prefer that course which is disclosed in such as Bradley v. State, 111 Ga. 168, 36 S. E. 630, 50 L. R. A. 691, 78 Am. St. Rep. 157, and Little v. State, 90 Ind. 338, 46 Am. Rep. 224, although we do not now commit ourselves to go quite so far as either of the two cases last cited. See, also, Sinclair v. U. S., 279 U. S. 749, 49 S. Ct. 471, 73 L. Ed. 938, 63 A. L. R. 1258.

In the Bradley Case, the contemnor went to one of the attorneys engaged in the trial and stated to the attorney that a member of the jury could be approached and illegally influenced in obtaining a verdict or a mistrial, and offered to do so, which offer was rejected. A conviction for contempt was upheld. In the Little Case, the contemnor approached the father whose son was on trial for murder, and offered to influence three members of the jury and to assure the acquittal of the son for two hundred dollars, which offer was rejected. The contemnor defended that he had no purpose to approach the jurors, and did not approach any of them, but that his only purpose was to get the money for his own use. A sentence for contempt was upheld, and, among other things, the court said that it was as much a contempt to

represent that a juror could be illegally influenced by the use of money as to represent the like concerning the judge of the court. These cases are direct authority that personal contact with the juror is not a necessary requisite to the contempt, and we so hold.

In Knox v. State, 160 Miss. 494, 500, 135 So. 206, 207, this court has defined a constructive contempt as "any act calculated to impede, embarrass, obstruct, defeat, or corrupt the administration of courts of justice, when the act is done beyond the presence of the court." And in Prine v. State, 143 Miss. 231, 242, 108 So. 716, it was held that an unsuccessful attempt to obstruct justice is a contempt as fully completed as had the attempt ripened into success. Under the principles recognized in those cases, none would doubt that an offer of a bribe to a juror would be a contempt if conveyed by a mailed letter addressed to the juror, or by a third party as a messenger or go-between, although the juror at once rejected the offer. For what reason could it be said that it is any less a contempt when the failure of the effort is because the message never reached the juror? Is the actual guilt of the contemnor in such case any less? When there is a deliberate purpose or calculation to corrupt the administration of justice and that purpose or calculation is accompanied by a definite overt act or declaration on the part of the contemnor, designed to carry that purpose or calculation into effect, the contempt is complete; and the failure of the design becomes immaterial, except as it may have some place in considering the punishment to be inflicted.

It is argued also by appellant that, because the information was not filed and the hearing had until the elapse of approximately a year after the happening of the acts charged, the court should hold the prosecution barred by laches. There is much reason for requiring promptitude in proceeding to a hearing when the contempt has been committed in the presence of the court;

but, in constructive contempts, the statutes of limitation of two years applicable to misdemeanors will be adopted by analogy, unless a delay of that length of time in the prosecution would be unjust, as, for instance, because of the death or disappearance of the witnesses who, if alive or available, would probably exonerate the alleged contemnor. See cases cited notes 13 C. J., p. 61. There is no such case here.

Affirmed.