## SUPREME COURT.

The People of the State of New York agt. The Albany and Vermont Railroad Company.

In all cases where the power to *issue* an injunction exists, the power of *compelling obedience* to it also exists.

An *injunction* may issue against a *corporation,* and when disobeyed by such corporation it may be punished for contempt.

Although a *corporation* cannot be *attached* for a contempt, as in the case of natural persons, it may be punished nevertheless, by a *fine,* or the *sequestration* of its property. (*This seems to be adverse to the views expressed by Judge* Duer, *in Davis* agt. *The Mayor &c.,* 1 *Duer,* 484.)

An injunction is never *retroactive.* To convict a party of *contempt in disobeying an injunction,* it must satisfactorily appear either that the party through himself or his agents have, since knowledge of the injunction, violated its provisions, or had before the injunction, authorized the act prohibited by it to be done, and omitted to interfere to prevent a *subsequent violation* by a party who stood to him in the relation of an agent or subordinate, whose movements he could legally control.

*Albany Special Term, October,* 1860.

Motion by plaintiffs to convict the defendants of a contempt, for violating a temporary injunction, issued by Mr. Justice Peckham, on the 24th of September, 1860, and an absolute injunction issued by him on the 1st of October, 1860, and to punish such contempt by a sequestration of the property and franchises of the defendants. The injunction ordered defendants and their agents to desist and refrain from taking

up or removing from their road, or selling or otherwise disposing of the iron forming the track of said road, or any part thereof, or the spikes, rivets or fastenings thereof, or any of the fixtures of said road, except such as were unfit for use, and necessary to be removed in order to put said road in repair for the safe carriage of freight and passengers. (*See S. C.*, 19 *How.*, 523, *on granting the injunction.*)

J. GIBSON and JOHN H. REYNOLDS, *for plaintiffs.*
J. B. GALE and W. A. BEACH, *for defendants.*

HOGEBOOM, Justice. The proceeding by injunction is an important branch of the remedial power of this court. It operates with great and salutary effect, to prevent many public and private injuries, for which no other equally effective and comprehensive remedy exists.

To render it of any avail, it must of course, be capable of being enforced. And it would be a matter of serious regret, if in all cases where the power to issue the process of injunction exists, the power of compelling obedience to it did not also exist. I cannot believe there is such a solecism in the law. If there is, it deserves immediate attention on the part of the legislature.

It is not denied that an injunction may issue against a corporation. It is every day's practice, to issue process of that character. A corporation is an actual existence, in a legal sense, as much as a natural person. It is an artificial being, it is true, but it can act, and frequently with great, and it may be, with ruinous effect. It is conceded it may, by the courts, in a proper case, be restrained from acting, that is, be *ordered* not to act in a given way.

Is it possible, that this order cannot be enforced? Are courts so impotent, is the law so defective, that the order of the court cannot be carried into effect against the offending party? It would be a gross reflection upon the law of the land, if this were so.

It is not so.   The power that makes the order can enforce it.   The party who disobeys the order, may be punished for it.   I acknowledge no exception to the rule.   For this purpose, the court is the government ; the representative of the people; the embodiment of the law.   Every person within its jurisdiction, high or low, natural or artificial, is, in a proper case, subject to its power, and in case of diso-bedience, amenable to punishment.

It is no answer, to say that the act of the corporation is manifested and carried into effect by individuals, and that those persons are always liable to the process of the law, and may be punished, and therefore, an injured party has always the means of redress.   It is a poor compliment to the law to say that, while the principal is the real offender, though you cannot reach him, you can reach his agent, his instrument.   Besides, the agent may be entirely irresponsi-ble, or comparatively innocent.

And why cannot a corporation be punished for contempt ? It is said because it cannot be attached, that is, person-ally *seized* or *taken*.   This shows no sufficient reason.   In the former equity practice, it sometimes became necessary to order a corporation to answer a bill in chancery.   If it refused, it was not strictly *attached*, as a natural person would be; but a distringas or writ authorizing a distress upon its property was issued; this failing, a second, and sometimes a third was issued, and if all these were insuffi-cient, then process of sequestration was issued against it, and its property sequestered for the benefit of the aggrieved party, (1 *Barb. Ch. Pr.*, 76.)   Why may not process of sequestration be issued against it, to punish it for contempt in violating an injunction, as well as contempt in refusing to answer ?   Why may it not be *fined* for the contempt and the fine collected in the ordinary way?   Corporations are often indicted for neglect of duty, or for positive misfeas-ance, and the punishment, upon conviction, is by the impo-sition of a fine.   The punishment by *fine* for a contempt is

one of the usual modes of punishment and directly recognized by statute, (2 *R. S.*, 538.) So, also, the sequestration of property is recognized among the elementary writers and in adjudicated cases, as an appropriate and lawful mode of punishment for a contempt. (2 *Barb. Ch. Pr.*, 280; *Van Santvoord's Eq. Pr.*, 635; *People* agt. *Rogers*, 2 *Paige*, 103; *Lupton* agt. *Hescott*, 1 *Sim. & Stew.*, 274.)

It is quite true, as before stated, that the parties directly guilty in their own persons, of a violation of the injunction, may be punished. That may be necessary or expedient to be done; but that may not be enough; it may be, and often is, quite proper that the principal offender who sets on foot the violation of the injunction, should be punished and made to feel the power of the law.

Nor is it any answer to say, that thus the innocent stockholders may suffer for the offensive or unlawful acts of the directors of a corporation. That is always so; that is incident to the very nature of a corporation. The directors are the agents of the stockholders, appointed by them, and they like all others, who appoint unworthy or indiscreet agents must take the consequences of their own unfortunate selection.

I cannot coincide in the opinion expressed by the late Mr. Justice DUER, of the superior court of New York, in *Davis* agt. *The Mayor, &c., of New York*, (1 *Duer*, 484,) as to the inefficiency of this process upon the corporation itself. It is true that a corporation cannot be personally attached or apprehended, but I do not agree that there are no means by which its obedience to an injunction can be compelled, or its disobedience punished, or that as to the corporation itself, the injunction is a mere *bratum fulmen*. On the contrary, I think the means of punishment are within the reach of the court, and though not probably quite so effective as in the case of a natural person, (for imprisonment cannot be resorted to,) yet they are sufficiently so in most cases to effect the desired object. Much of the sup-

posed impunity of corporations, as such, from punishment
for contempt, when spoken of in the elementary treatises on
this subject, is founded, I think, upon the idea that they
cannot be attached, from which it by no means follows, that
other modes of punishment may not be administered.

Substantially the same views which I have here expressed
are taken in a recent treatise on equity practice, ( *Van*
*Santvoord's Eq. Pr.*, 641.)   The author states, indeed, that
a corporation is not amenable to process of contempt; but
he holds further, that " a corporation not being amenable
to process of contempt, may be proceeded against by writ
of sequestration," and by statute this process is explicitly
authorized against a corporation upon the return of an exe-
cution unsatisfied upon a judgment at law or decree in
equity.   (2 *R. S.* 463; *Van Sant. Eq. Pr.* 646.)

I am satisfied, therefore, of the power of the court
to punish a corporation for a willful disobedience of the
order of the court, but I am not satisfied that the evidence
is sufficient to convict the defendants of a violation of the
injunction.

To convict the defendants, it must, of course, appear that
they have violated the injunction.   There is no evidence
that they have done this *directly*; for example, by the pas-
sage of a resolution or other direct instructions from the
corporation itself to remove the iron.

Have they violated the injunction through their agents?
It is said certain men on the road were engaged in taking
up the iron.   The defendants show that these men were not
in their employ and their directors swear that they did not,
nor did the corporation in any way direct or countenance
the violation of the injunction.

It is said this iron was taken away in cars.   It is not
shown they were the cars of the company or propelled by
its officers, agents or men.   Nor ought this, I think, to be
inferred against the direct oath of the defendants.   The
presumption is repelled.

It is said the defendants sold the iron to Mr. Griswold, or the Rensselaer iron company. But this sale was before the injunction was served, or issued, and indeed before the commencement of this suit. And it matters not whether the sale was lawful or unlawful, it was not, as to the *defendants*, a violation of the injunction. After the sale, Griswold acted, not as their agent, but as an independent party, under rights of his own. The defendants could not legally control him, and were not bound, I think, to attempt to do so. If they had undertaken to prevent him from removing the iron, it would have been an unwarrantable interference. They might have been liable to an action for damages, or for a specific performance of the contract, and would have been if the contract were lawful. And it may be that it would have been lawful as between the parties, though inoperative against the public.

Nor would it, as I conceive, have been a violation of the injunction, if at the very time they sold the iron to Griswold, the parties contemplated an abandonment of the road, or even apprehended a coming injunction. Those facts might entitle the plaintiffs or some other parties to relief, but could not make the injunction react. So long as the transaction between the defendants and Griswold was a *contract*, changing or undertaking to change the title to the property, instead of a merely colorable transaction, or a mere appointment of an agent, I think the defendants occupy a distinct and independent position from that of Griswold, and are not to be confounded or identified with him.

Nor even if the contract with Griswold was merely *verbal*, (which is not proved,) so as not to operate a change of title to the real estate, or even *unlawful*, as against the public, would that make the defendants responsible for the acts of Griswold. If the contract was verbal, it was completely operative between the parties, so long as it received their sanction and was unrevoked; it operated as a license

or authority to Griswold to remove the iron; a license con-
ferred before the injunction was issued; conferred for a
consideration between the parties, and I do not think the
defendants, by the injunction, were ordered to revoke it, or
do any other positive act by which the removal would be
prevented.   And as before stated, the unlawfulness of the
act, as against the public, (for such we must assume it to be,
upon the opinion and decision of the learned judge who
granted the injunction,) does not make it necessarily unlaw-
ful as between the contracting parties, and I do not see why
Griswold might not have an action for damages against the
defendants, if they  prevented him from removing the iron.
And I am of opinion that the defendants were not required
by the injunction to perform this positive act of interference.

But whether I am right to the full extent of the pro-
position last mentioned or not, I am satisfied upon the-
case now made, that the plaintiffs have not brought the
defendants within it.   The complaint was filed in evident
ignorance of the sale to Griswold or the Rensselaer iron
company, and of course the injunction was framed without
any allusion to or anticipation of the state of facts thus pre-
sented.   Neither the complaint nor the affidavits, by which
it is sought to bring the defendants into contempt make
any reference to such a sale, nor allege or suggest that such
a sale was in contemplation; nor that the object of such a
sale was to accomplish or aid the project of an abandon-
ment of their road, or was expected to be resorted to for
that purpose, and in that manner to shield themselves from
responsibility, or from punishment for the violation of an
anticipated injunction.   In the absence of any one of these
allegations, I am not disposed to punish the defendants for
a contempt.   The allegation of disobedience should be
direct and positive, and the opportunity to answer full and
complete.   In addition to this, the rights of a third party,
Griswold or the Rensselaer iron company are involved.
The contract for the sale of the iron, however invalid it

might seem to the court, would not be vacated or set aside in a court of equity, without making the latter a party to the suit. And I doubt whether it would be discreet to punish for a violation of an injunction upon the ground of the alleged unlawfulness of the contract, without giving such party an opportunity to be heard.

An injunction is never retroactive. It can never make make an act unlawful or a disobedience to its provisions which was done before the injunction was granted. To convict the defendants, therefore, of a contempt, it must satisfactorily appear, either that the defendants, through themselves or their agents, have since knowledge of the injunction, violated its provisions, or had, before the injunction, authorized the act prohibited by it to be done, and omitted to interfere to prevent a subsequent violation by a party who stood to them in the mere relation of an agent or subordinate, whose movements they could legally control.

It is said the defendants might have refused their road for the transportation of the iron, or have switched off the cars, or in some similar or other way, prevented its removal. I have already stated that the evidence is not decisive that the iron was carried away on the defendants' road, or that the defendants' cars were used in the transportation of the iron, or that the defendants were, after the injunction, operating the road, or using the cars. And as before remarked, so long as the defendants kept themselves and their agents from any direct or indirect connection with the removal of the property, I think they were not required by the terms or legal import of the injunction to institute any active or positive measures to prevent its removal by third persons.

I am, therefore, of opinion, that the motion of the plaintiffs should be denied, for want of evidence sufficient to convict the defendants of a contempt. But as the question is important, and the plaintiffs claim that some portions of the defendants' affidavits are susceptible of contradiction

or explanation, and as the act charged, if committed by the defendants, involves a direct contempt of the authority of this court, I think the plaintiffs should have leave to renew the motion on payment of $10 costs of opposing the same.