ELIZABETH FIEDLER et al., Respondents, v. BAMBRICK BROTHERS CONSTRUCTION COMPANY, Appellant.

St. Louis Court of Appeals. Submitted on Briefs November 7, 1911. Opinion Filed January 9, 1912.

1. INJUNCTIONS: Violation: Constructive Contempt: Corporations. The violation, by a private corporation, of an injunction enjoining it from operating a quarry so as to injure the property of the complainants is a "constructive," and not a criminal, contempt, and a proceeding to punish it for such contempt is ancillary to the main case.

2. ———: ———: ———: Punishment. The violation of an injunction may be punished by fine or imprisonment of the contemner.

3. ———: ———: ———: Discharge of One Contemner: Effect on Others: Corporations. It is within the discretion of the court to discharge persons cited for contempt in violating an injunction; and hence where a corporation and its officers and servants were cited for contempt in violating an injunction, the fact that the officers and servants were discharged by the court would not absolve the corporation from liability for their acts.

4. CONTEMPT: Civil and Criminal Contempt. A criminal contempt embraces all acts committed against the majesty of the law, and the primary purpose of its punishment is the vindication of public authority, while a civil contempt is the failure or refusal of a person to do something which he has been ordered to do, or the doing of something which he has been ordered not to do, for the benefit of the other party to the cause.

5. CORPORATIONS: Recognizance for Appearance. A corporation can be put under recognizance—"let to bail"—to compel its appearance at a term of court, in the same manner as can an individual.

6. INJUNCTIONS: Violation: Contempt: Punishment of Corporation: Statutes Considered. Sections 2528, 3881 and 3882, Revised Statutes 1909, do not measure the power of courts of record in the matter of contempts, and the commitment of the contemner to jail, under section 2528, is not an exclusive remedy, but, in the case of corporations, the punishment may be the imposition of a fine.

7. CONTEMPT: Punishment: Absolute Powers of Courts. All courts of record are invested with the inherent power to punish

for contempt, and it is beyond the power of the Legislature to curtail the power of the Supreme Court, the Courts of Appeals or the Circuit Courts in this respect, inasmuch as they are Constitutional Courts.

8. ———: ———: **Corporations: Common Law Process: Distringas.** Prior to the adoption of the Code, in a proceeding against a corporation for contempt, the process in equity was by sequestration, and in the courts of law *distringas* issued— that being a writ commanding the sheriff to distrain one of his goods and chattels to enforce compliance with what was required of him.

9. ———: ———: **Corporations: Statutes Construed.** There is no reason to exclude corporations from the term "persons" in sections 2825 and 3881, Revised Statutes 1909, relating to the power of courts to punish for contempt.

10. ———: ———: ———. Even in the absence of statutory power, courts of record may cite and punish corporations for contempt.

11. **INJUNCTIONS: Violation by Corporation: Contempt: Punish-ment by Fine: Facts Stated.** A corporation was enjoined from operating its quarry so as to injure adjacent property of the complainants. The officers and employees of defendant violated the injunction, and on the petition of some of the complainants, setting out such violation, the court issued a citation, commanding defendant to appear and show cause why it should not be punished for contempt. The hearing on this citation resulted in defendant being adjudged guilty and ordered to pay a fine. *Held*, that defendant, having violated the injunction by its officers and employees, must answer for that by paying for the consequences out of its assets, and hence that a fine was properly imposed.

12. ———: ———: ———: ———: **Disposition of Fine: Judgments.** The failure of a judgment, which imposes a fine on a corporation for contempt in violating an injunction, to provide for the disposition of the fine does not render it void, but at most is an informality.

13. ———: ———: ———: ———: **Excessive Fine.** An order imposing a fine of $3000 on a corporation for contempt in violating an injunction, made upon a full hearing of the evidence, is *held* not to be excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

162 App.—34

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

(1) In Missouri, a corporation cannot be guilty of a criminal contempt. Section 2528, Revised Statutes 1909; section 3642, Revised Statutes 1899. (2) If the operating officers and servants of the defendant were not guilty of contempt (and the court so found) then the corporation could not be guilty of contempt. (3) A punitive sentence could not be imposed on defendant because the proceedings herein were a part of the original cause in equity. Gompers v. Buck S. & R. Co., decided May 15, 1911, by the Supreme Court of the United States. (4) The fine is so excessive as to shock the sense of justice. Sec. 3882, R. S. 1909; Ex parte Crenshaw, 80 Mo. 447; State ex rel. v. Shepherd, 177 Mo. 221; In re Clark, 208 Mo. l. c. 131; State ex rel. v. Clark, 134 Mo. App. 55; Krebs v. Const. Co., 129 S. W. 427.

*Walther & Muench* for respondent.

(1) A corporation is a "person" at common law and within the purview of section 2528, Revised Statutes 1909, and can be cited for contempt of court either civil or criminal. Union No. 4 v. People, 220 Ill. 372; 6 Words and Phrases, p. 5327; St. Louis v. Rogers, 7 Mo. 21; 1 Thompson on Corporations, sec. 11; 9 Cyc. 23; 5 Thompson on Corps., p. —; Telegram Newspaper Co. v. Commonwealth, 172 Mass. 296. The statutes including corporations within the meaning of the word "person" are declaratory of the common law and not in derogation of it. R. S. 1909, sec. 4930; R. S. 1909, sec. 6528; R. S. 1909, sec. 9032; R. S. 1909, sec. 10160; R. S. 1909, sec. 11519. (2) The proceeding for contempt for violating the terms of this injunction is not a criminal proceeding in the strict sense of the word, but quasi criminal only and is a part of the main case only in so far as it is a proceeding to com-

pel obedience to the court's order. 9 Cyc. 33-34; State ex rel. v. Bland, 189 Mo. 197. (3) It is within the discretion of the court to punish one cited for contempt, and the fact that Bambrick and Donovan were discharged was not a finding that they had not violated the injunction, but merely a refusal to punish. (4) Defendant was guilty of contempt and the fine assessed against it was not excessive, it having been previously cited and fined for the violation of this injunction. (5) The judgment is not a nullity. Calloway v. State, 1 Mo. 211; Pickering v. Templeton, 2 Mo. App. 424; 23 Cyc. 669.

REYNOLDS, P. J.—On the 9th of May, 1907, the defendant corporation, appellant here, in a suit in equity instituted in the circuit court of the city of St. Louis, in which it was defendant and respondents plaintiffs, was perpetually enjoined from operating its quarry, located in a designated block in the city of St. Louis, or permitting it to be operated, so as to throw dirt, rocks or stones on any of the described premises of plaintiffs, or from so operating or permitting its quarry to be so operated, as to jar or shake any of the buildings on any of the premises of plaintiffs, or so as to cause them to shake and vibrate, or so as to impair the comfortable use and occupancy of the premises of plaintiffs for dwelling purposes by loud and deafening sounds and explosions in the quarry. Afterwards, on the 22nd of September, 1907, two of the plaintiffs in the original suit, filed their verified complaint, entitled in the original suit, wherein they charged that the defendant and John Bambrick, its president, and James Donovan, its superintendent, had violated and disobeyed the injunction of the court in that on the 21st of September, 1907, they so operated the quarry as to throw large pieces of rock upon the land and improvements of those two plaintiffs, thereby injuring and damaging their prop-

erty. Citation was duly issued out of the circuit court against and served upon the three defendants to appear in that court and show cause why they should not be punished for contempt in having disobeyed the injunction.

It appears by the statement of counsel for appellant that defendant and its officers had been proceeded against in the same suit on three different occasions for violation of the injunction, the first occasion being in July, 1907, when the defendant company was fined fifty dollars. The second was on the 22nd of September, 1907, which is the present proceeding. Under the third, instituted and determined in the circuit court November 11, 1907, and after the present proceeding was instituted, Bambrick, the president of the defendant company, was adjudged in willful contempt of the order of court and committed to jail for a term of five days, the defendant company and Donovan being discharged from that citation. An appeal was taken by Bambrick from that sentence to this court and the judgment of the circuit court affirmed. [See Fiedler et al., Respondents, v. Bambrick, Appellant, 135 Mo. App. 301, 115 S. W. 1033.]

In the proceeding under the complaint of September 22nd, which is the one now before us, citation having been issued against and served upon the company and upon Bambrick and Donovan, a judgment was entered October 10, 1907, in which after reciting the appearance of the parties and the hearing of the evidence and proof adduced, the court found, "that the defendant, Bambrick Brothers Construction Company, did after having on September 30, 1907, been fined by this court for violating the command of the decree of injunction in this cause, again willfully disobey and violate said command, and is again in contempt of this court." We are not advised by anything in the record before us as to this previous violation referred to. Thereupon the court assessed a

fine of $3000 and costs against the defendant com-
pany and ordered that execution issue therefor. The
court further ordered that the individual defendants
John Bambrick and James Donovan "be discharged
from said citation." From the judgment against it
the defendant company appealed to the Supreme
Court of this state, claiming, among other things, that
in assessing the fine the court had violated section 30,
of article 2, of the Constitution of this state, in that
it had deprived defendant of its property without due
process of law, and that it had violated the provisions
of the Fourteenth Amendment to the Constitution of
the United States, in that defendant by the judgment
of the court had been deprived of its property with-
out due process of law and had been denied the equal
protection of the law. While the case was pending in
the Supreme Court, the defendant abandoned these
claims, and on its motion the cause was transferred to
this court by the Supreme Court.

In this court defendant makes four points as
grounds for reversal of the judgment of the circuit
court which we will consider, not in the order as made,
but in our own order.

We have read the testimony in the case as pre-
sented by the abstract of the learned counsel for ap-
pellant. Without setting it out at length, it is suffi-
cient to say that it fully sustains the finding of the
learned trial court as to a violation of the terms of the
injunction which the court had before then issued in
the original case, and to the damage of the respond-
ents. In fact, the learned counsel for appellant does
not challenge this.

I. It is argued by those counsel as their third
proposition, that a punitive sentence could not be im-
posed on defendant because the proceedings herein
were a part of the original cause in equity. The sole
authority cited by them for this is Gompers v. Buck

Stove & Range Co., 221 U. S. 418. Counsel miscon-
strue that opinion, as also what has been here done.
This is not a proceeding by the state for the recovery
of a fine and infliction of a penalty. The offense was
a "constructive" contempt, as that word is defined,
not a criminal contempt. [See In re Clark, 208 Mo.
121, l. c. 139, *et seq.,* 106 S. W. 990.] As is said in the
Gompers case, supra, l. c. 443 *et seq.,* and this is quoted
by counsel for appellant, so it can be said here, the al-
leged contempt did not consist in the defendant refus-
ing to do any affirmative act required, "but rather in
doing that which had been prohibited. The only pos-
sible remedial relief for such disobedience would have
been to impose a fine for the use of complainant, meas-
ured in some degree by the pecuniary injury caused by
the act of disobedience." The main points decided in
the Gompers case  are, first, a sentence of imprison-
ment such as was there imposed, could only stand when
the proceeding was in its nature criminal; but that
suit, in which the only sentence imposed was one of im-
prisonment, was a civil suit, in which the punishment
could be by fine alone, the fine to go to the benefit
of the complainants in the civil suit by way of com-
pensation; second, by reason of the original cause hav-
ing been settled, the case had become a moot case, and
hence neither the lower courts nor the Supreme Court
any longer had a case before them. It has been dis-
tinctly held by our court in the case of Fiedler v. Bam-
brick, supra, as well as by the Supreme Court in State
ex rel. Chicago, B. & Q. R. Co. v. Bland, 189 Mo. 197,
88 S. W. 28, that a proceeding for violation of an in-
junction in a cause within the jurisdiction of the court
was ancillary to the main case, and that it was within
the power of the court issuing the injunction to pun-
ish by fine or imprisonment for violation of the terms
of the injunction. Both of these cases, as also the
Clark case, supra, which also see on the above point
were held to be cases of indirect contempts.

II. It is argued by counsel for appellant as their second point, that it is absurd to hold the corporation guilty and absolve the individual officers. But the court did not absolve them; all it did was to discharge them from the citation. That was a matter within the discretion of the court. On this assumption that the individuals have been acquitted of contempt, it is argued that if the operating officers and servants of the corporation are not guilty of contempt then the corporation could not be guilty of contempt. That may be granted for argument merely. But it does not follow that because the court saw proper to discharge the officers and servants from the citation and thereby absolve them from punishment, that the corporation itself could not be made to suffer for the acts of those officers.

III. That brings us to the most serious question in the case, and that is the one made by counsel for appellant as their first point, namely, can a Missouri corporation be guilty of contempt? Counsel in support of their proposition that in Missouri a corporation cannot be guilty of a criminal contempt, refer to sections 2528 and 3881, Revised Statutes 1909. We might dispose of this by remarking that this defendant was not fined for a criminal contempt, but for civil contempt, and was proceeded against as for a civil and not a criminal contempt. In the light of the very illuminating and learned exposition and discussion of the several kinds of contempt given us by Judge LAMM in the opinion delivered by him in the case In re Clark, supra, and to be found in the second division of that opinion, commencing at page 144, it would be a work of supererogation to go into the distinction between them. Briefly, "criminal contempts embrace all acts committed against the majesty of the law, and the primary purpose of their punishment is the vindication of public authority. . . . A civil contempt is where

a person fails or refuses to do something which he has been ordered to do, or has done something he has been ordered not to do for the benefit of the other party to a cause." [In re Clark, supra, l. c. 144 and 145.]

In Gompers v. Bucks Stove & Range Co., supra, Mr. Justice LAMAR (l. c. 441), citing and quoting Bessette v. Conkey, 194 U. S. 329, says that "contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' . . . It is not the fact of punishment, but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison."

"There is another important difference," says Mr. Justice Lamar, l. c. 444 and 445, speaking of civil and criminal contempts; "Proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause. But on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." The former is the case here.

With these preliminary remarks, we proceed to consider the question of whether, in our state, a corporation can be proceeded against for a civil or for an indirect contempt of court, repeating that we hold that the contempt here charged falls under the classification of a civil contempt.

We do not discuss the matter of a criminal contempt, nor of a direct contempt, for the one being so well defined by Judge LAMM in the Clark case, supra, l. c. 144 and 145, as an act "committed against the majesty of the law," the other as a contempt committed "in the face of the court," are not here involved.

Section 2528, R. S. 1909, is found in the article concerning injunctions and provides: "If any person disobey or violate an injunction after it is served on him, the circuit court to which it is returned, or any judge thereof in vacation, shall issue an attachment against him for a contempt; and unless he shall disprove or purge the contempt, if in vacation, the judge may commit him to jail until the sitting of the court in which the injunction is pending, or take bail for his appearance in said court at the next term thereof, to answer for the contempt, and abide the order of the court, and in the meantime to observe and obey the injunction." Section 3881 of that revision is in the article concerning the general powers and duties of courts of record. It purports to give every court of record power to punish "as for criminal contempt" persons guilty of various acts, among others, "willful disobedience of any process or order lawfully issued or made by it." Section 3882, which follows, attempts to limit the punishment.

The thought in the mind of the learned counsel for appellant, in connection with section 2528, evidently is that it gives an exclusive remedy by imprisonment. Hence they argue that as a corporation cannot be imprisoned, the punishment here described cannot be imposed on it, and that a corporation, as an entity, is beyond the reach of the court by punishment for disobedience to an injunction. That argument might be sound if that section or section 3881 measured the power of our courts of record in the matter of contempts, or if commitment to jail was the only

thing possible. But neither of these is true. In the first place, a corporation can be put under recognizance, "let to bail," to compel its appearance at a term of court in the same manner as can an individual. As to this section being the measure of the power of the court, it has been settled in our state that all our courts of record, as well the Supreme and Appellate Courts as the circuit courts, being constitutional courts, are invested with certain inherent powers, among which powers is the power to punish for contempt. They derive this power, independent of the statute and beyond the right of curtailment by the Legislature, it being essential to the maintenance of their jurisdiction. Construing what was decided by our Supreme Court in State ex inf. Crow v. Shepherd, 177 Mo. 205, 76 S. W. 79, our Supreme Court has said in the case of In re Clark, supra, 1. c. 147 *et seq.*, that the broad language used in that case, measured by recognized canons of construction, must be read in the light of the case and facts held in judgment; that the court had in effect ruled "that a constitutional court may go to the common law for its inherent power to punish all contempts, recognized as such at the common law; and to the extent that the statute clipped such power, it was unconstitutional." Our circuit courts as well as our Courts of Appeals are none the less constitutional courts and courts of record than is the Supreme Court. In fact, our circuit courts are more truly courts of unlimited jurisdiction than either the Supreme Court or the Courts of Appeals.

At common law as also within their jurisdiction as courts of equity, jurisdiction over corporations has always been assumed and exercised by courts of record.

An old authority on practice in the Court of King's Bench, Archbold (2 Archbold's Prac., *p. 108 (Ed. of 1834), states that proceedings against corporations aggregate must be by original summons or at-

tachment, and *distringas,* and the plaintiff may proceed to compel the appearance of the defendant corporation by levying issues on successive writs of *distringas,* moving to increase them, and from time to time to sell them, as directed.

As defined by Bouvier's Law Dict. (vol. 1, p. 590), a writ of *distringas* is a writ directed to the sheriff, commanding him to distrain one of his goods and chattels to enforce a compliance with what is required of him, and it was used to compel an appearance where the party could not be found "and in equity may be availed of to compel the appearance of a corporation aggregate."

This matter of compelling the appearance of a corporation is met by our Code by the issue and service of a summons, or, in the courts of equity, where the distinction between the two systems is followed, by subpoena.

Having in mind this form of service on corporations as adopted by the common law courts, those courts as well as the courts of equity had no trouble in enforcing a fine levied on the corporation for contempt and it was accordingly held that proceedings by way of contempt would lie against corporations as well as individuals. In the case of individuals the process is by attachment of the person followed by a fine or imprisonment or both. In the case of a corporation the process in equity was by writ of sequestration; in the courts of law *distringas* issued as an original process, to be followed, if necessary by an alias and pluries, until justice be done. [See London v. Lynn, 1 H. Black. Reps. 206, l. c. 209, and note b page 209; Spokes v. The Banbury Local Board of Health, 11 Jurist (N. S.), part I, 1010; McKim v. Odom, 3 Bland's Chan. Rep. (M. D.), 407, l. c. 425 *et seq.;* West Jersey Traction Co. v. Camden, 58 N. J. L. 536, l. c. 540.] It is true that in this last cited case, as well, possibly, in others above or hereafter

referred to, the state or the crown was a party and the prosecutor for the fine, but so far as concerns the amenability of a corporation to citation for contempt, there is no difference; the only distinction arising over the mode of procedure and the party in whose name the action must be brought and prosecuted.

In People v. The Albany & Vermont R. Co., 12 Abb. Pr. 171, a prosecution in the name of the people for the imposition of a fine for contempt of court, the contempt consisting of the willful disobedience of the order of the court, it is held that the proceeding will lie, the court saying (l. c. 173): "Corporations are often indicted for neglect of duty, or for positive misfeasance, and the punishment, upon conviction, is by the imposition of a fine. The punishment by fine for a contempt is one of the usual modes of punishment, and directly recognized by statute. . . . So, also, the sequestration of property is recognized among the elementary writers and in adjudicated cases, as an appropriate and lawful mode of punishment for a contempt," citing cases. This case was affirmed by the Court of Appeals of New York under the title The Mayor, Aldermen and Commonalty of the City of New York v. The New York & Staten Island Ferry Co., 64 N. Y. 622.

In Franklin Union No. 4 v. People, supra, at page 656, the court quotes approvingly 7 Am. & Eng. Ency. of Law (2 Ed.), p. 847, as stating the accepted rule: "Formerly it was thought that a corporation could not be held liable for contempt, as, by reason of its impersonal nature, it could not be attached. And there are dicta to this effect in some of the late cases. The weight of modern authority, however, is against this doctrine. While a corporation cannot be attached or imprisoned, it may nevertheless be guilty of a contempt in disobeying or violating an order or decree of court, as it may be guilty of a tort or crime, and it may be fined therefor, and its property seques-

tered." The opinion in that case further states that the rule that a corporation may be dealt with and punished for a contempt of court is sustained by abundant authority. A long line of cases is cited in support of this, the only exception being as to municipal corporations, whose property cannot be attached in proceedings for contempt any more than by ordinary execution, so that the remedy against a municipal corporation for a contempt of court is by proceeding against the officers through whom the corporation itself has acted. The learned counsel for appellant, referring to this case of Franklin Union No. 4 v. People, dispose of it as authority, because, as they claim, it was a case in which the people of Illinois were complainants and the alleged contempt was the direct action of Franklin Union No. 4 at a meeting of that body. As before stated, this distinction has no bearing on the question of the power to punish a corporation for contempt; it goes only to the kind of proceeding necessary. The appellate court, however, distinctly says in its opinion (1. c. 667): "It is urged that the contempt charged herein is criminal. The proceeding was civil and in no sense criminal."

In Golden Gate Consolidated Hydraulic Mining Co. v. Superior Court of Yuba County, 65 Cal. 187, it is held that a corporation can be punished for contempt in disobeying an injunction.

In Telegram Newspaper Co. v. Commonwealth, 172 Mass. 294, answering the contention that was there made, that a corporation cannot be guilty of a criminal contempt of court, the court proceeds as upon an assumed proposition, that it may be fined for what is called a civil contempt, and then enumerates the cases in which a corporation may be liable civilly, as for instance malicious prosecution or libel, and holds that while it cannot be arrested or imprisoned, its property may be taken, "either as compensation for a private wrong or as punishment for a public wrong."

In Rapalje on Contempts, page 63, section 48, it is said that corporations, other than municipal, are as much amenable to process of contempt for violating injunctions as are private individuals. Mr. High (2 High on Injunctions, sec. 1460, p. 1468, [4 Ed.],) says: "A court of equity has jurisdiction to punish a corporation as well as a private person for contempt in violating an injunction." In brief, all modern, accepted authority holds that way.

While the subject of proceedings against corporations for contempt has not been adjudicated in either our Supreme Court or in the Courts of Appeals, it has long ago been held that corporations as well as individuals when guilty of libel or of malicious prosecution, may be proceeded against civilly. [See Boogher v. The Life Association of America, 75 Mo. 319; also Woodward v. St. Louis & S. F. R. Co., 85 Mo. 142.] In State ex inf. Crow v. Armour Packing Co., 173 Mo. 356, 73 S. W. 645, a corporation was held liable for giving unlawful rebates. It is true that this, as well as State ex inf. Crow v. Firemen's Fund Ins. Co., 152 Mo. 1, 52 S. W. 595, and several like cases, were instituted under statutes particularly providing for proceedings against corporations, but they illustrate the proposition that corporations can be proceeded against for penalties, fines and the like, and their property taken as compensation for a public wrong as effectually as can individuals, although the acts themselves are done by the corporation through and by its agents.

In National Lead Co. v. Grote Paint Store Co., 80 Mo. App. 247, where it was set up as a defense against liability for the price of goods sold, that the seller was in an unlawful pool or trust, and hence, under the statute, could not recover, this court went to the reason for holding the corporation itself liable to the penalties of the law when it said (l. c. 270) that if the stockholders and governing officers of the

offending corporation combined with each other to violate any of the provisions of the law, "through the instrumentality of their corporate entity, then the corporation composed by them was a party to such illegal combination within both the letter and the spirit" of the law. In brief, the corporate officers acting for it, violating the law, the body, the corporate entity, must suffer out of its effects and assets and property for that violation. So it is here. This defendant, by its officers and employees, violated the injunction. The corporate body must answer for that, paying for the consequences out of its assets.

Counsel argue that the words "person" or "persons" do not, under our laws, include corporations, except in case where the statute has so said, and that the statutes governing contempt do not define "persons" as including corporations. In very many sections of our statutes the word "person" or "persons" has been defined as including a body of persons whether incorporated or not. So it is in our Negotiable Instrument Law (R. S. 1909, sec. 10160.) In our revenue laws, section 11519, will be found a like definition. In the definition of crimes, section 4930, it is enacted that when the term person is used "to designate the party whose property may be the subject of any offense, such term shall be construed to include the United States, this state or any other state, government or country, a county, or any other municipal, public or private corporation, which may lawfully own any property within this state, as well as individuals." So also in the statute concerning the preservation of fish and game, section 6528, the word person is used to comprehend corporations. Hence although the particular sections referred to by counsel for appellant, that is sections 2825 and 3881, Revised Statutes 1909, use the word persons, as those who may be guilty of contempt and punished therefor, we see no reason to exclude corporations from the term persons. But as

appears in the cases heretofore cited, all courts of record, even without the aid of the statute, can cite and punish corporations for contempt. When proceeding according to the common law, common law courts, or courts of chancery when proceeding in accordance with their practice, have always assumed and frequently exercised this power.

IV. Counsel argue that the judgment not being in favor of any one, it is a nullity. While it is true that in imposing the fine the court made no order for its disposition and did not order that it be paid to the school fund or to the plaintiffs in the cause, or reserve the question of its future disposition by express terms, it is beyond all cavil imposed upon the defendant. It is to be noted that in Franklin Union No. 4 v. People, 121 Ill. App. 647, 1. c. 657 and 658, the court intimates that the disposition of the fine is a matter with which the defendant is not concerned. So it may be here said, that matter being one which would arise in a contest between plaintiff and the school board after the fine had been collected. Section 11050, R. S. 1909, authorizes the St. Louis Board of Education to collect all fines and penalties provided by law to be paid into the school fund. Our Constitution, art. XI, sec. 8, provides that the "clear proceeds" of all penalties and forfeitures shall go into the school fund. [See this construed in Humes v. Missouri Pac. R. Co., 82 Mo. 221; State ex rel. Board of Education of St. Louis v. Nast, 209 Mo. 708 and cases cited, 1. c. 719, 108 S. W. 563.] In the case In re Staed, 116 Mo. 537, 22 S. W. 859, while the judgment and execution ordered the money which was collected at the suit of the state to be paid the state, the Supreme Court held that it went to the school board, and ordered the sheriff to so apply it.

The question of the disposition of this fine is not before us and need not be here decided. If it goes to

the school board under the provision of the Constitution as pertaining to the school fund, no order of the court sending it elsewhere would be valid, and if under the Constitution it goes to the school fund, no order of the court sending it there is necessary. In Calloway v. The State, 1 Mo. 211 (republication of 1843, p. 150), where there was a failure to specifically adjudge the fine against the defendants convict, held that this did not render the judgment a nullity; that "the statute laws of the then Territory designated to whom the fines were to be paid." Our Constitution now does this. At most the error is an informality, not vitiating the judgment. [Pickering v. Templeton, 2 Mo. App. 424, 1. c. 430 *et seq.*]. We therefore hold that the judgment here is not a nullity, and that is all we now determine upon that point.

V. Counsel for appellant urge that the fine is so excessive as to shock the sense of justice. It appears by the recital in the judgment assessing this fine that this was the second violation of the injunction by this defendant and its officers, the second interference with the property of plaintiffs. We are informed by counsel for appellant themselves that a third violation occurred of such serious character as to involve the imprisonment of the president of the corporation as a punishment for that violation, referring to the case of Fiedler et al. v. Bambrick, supra, where that action was approved. In the case now before us the trial judge saw and heard the witnesses, had before him the evidence of the violations, of their character, the damage to the property of plaintiffs, and the spirit in which the violations had been committed. He undoubtedly was familiar with all the facts and circumstances. Under such conditions he was better able to measure the amount to be imposed than we can possi-

162 App.—35

bly be. We have no disposition whatever to interfere with this conclusion.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.